MANWARING v. FARMERS' BANK OF COMMERCE.

Opinion delivered June 16, 1919.

1. VENDOR AND PURCHASER—EFFECT OF GIVING TITLE BOND.—Where the owner of land sells it to another and executes a bond for title, the effect of the contract is to create a mortgage upon the land in favor of the vendor to secure the purchase money notes; and when the vendor transfers the notes to another, the lien passes to the transferee.

2. SAME—TRANSFER OF PURCHASE NOTES—EFFECT OF RECONVEYANCE TO VENDOR.—Where a vendor transferred one of the purchase money notes to a third person and subsequently accepted a reconveyance from the vendee, and thereafter mortgaged the land to a fourth person, the vendee will be liable to the third person on the note held by him.

Appeal from Craighead Chancery Court, Western District; *Archer Wheatley,* Chancellor; affirmed.

STATEMENT OF FACTS.

This is a bill in equity filed by the assignee of purchase money notes given to a vendor under an executory contract of sale to subject the estate to the payment of his debt. The facts are as follows:

On the 27th day of July, 1908, W. E. Ward and Lucy C. Ward, his wife, executed a bond for title to J. T. Manwaring to 160 acres of land in Craighead County, Arkansas. The purchase price was $4,000, evidenced by two promissory notes of even date with the bond for title, both due on or before the first day of December, 1919, one note being for $3,000 and the other for $1,000. W. E. Ward and wife, Lucy C. Ward, bound themselves to convey the premises with warranty of title to J. T. Manwaring upon the payment of the notes when they became due. On the 29th day of October, 1910, W. E. Ward became indebted to the Bank of Benton in the sum of $1,160 and executed to it his promissory note for that sum. At the same time he assigned and transferred as collateral security therefor to the bank the note of J. T. Manwaring for $1,000 given in part payment of the purchase price of the land as above set forth. Payments were made on the note of Ward to the bank until the 4th day of Febru-

ary, 1916, which reduced it to the sum of $297.40 and on the last named date Ward executed to the bank a new note for that sum in lieu of the old one. While said note of J. T. Manwaring to W. E. Ward for $1,000 was in possession of the bank as collateral security for the amount which Ward owed the bank, J. T. Manwaring executed a deed to said W. E. Ward reconveying said land to him. In a short time thereafter W. E. Ward and Lucy C. Ward, his wife, executed to the American Trust Company their mortgage on said land to secure the payment of $2,500 and this mortgage was duly filed for record. The American Trust Company transferred and assigned its mortgage to Gertrude M. Sowel.

On the 6th day of December, 1916, the said W. E. Ward and Lucy C. Ward conveyed the land to W. A. Cope by a warranty deed which is duly recorded. Cope is now in possession of said land, and claims to be the owner thereof. W. E. Ward, Lucy C. Ward, the American Trust Company, Gertrude M. Sowel, and W. A. Cope, were all made defendants to the suit by the bank to foreclose its vendor's lien on said land.

On the 17th day of December, 1911, W. E. Ward borrowed $1,700 from the Farmers Bank of Commerce and executed his note therefor to the bank. Ward transferred and assigned to the bank as collateral security for the amount he owed it, the note of J. T. Manwaring to himself for $3,000 given for the purchase price of the 160 acres of land which he had contracted to sell Manwaring. While this note was in the possession of the bank as collateral security for the amount Ward owed the bank, Manwaring executed a deed to Ward reconveying to him the lands in controversy. Ward also subsequently executed a mortgage to the American Trust Company to secure it in the sum of $2,500 which he owed it. The American Trust Company transferred and assigned the note and mortgage executed to it by W. E. Ward and Lucy C. Ward, his wife, to Gertrude M. Sowel. W. E. Ward and wife then conveyed the land by warranty deed to W. A. Cope. W. E. Ward and Lucy C. Ward, his wife, the

American Trust Company, Gertrude M. Sowel and W. A. Cope were all made defendants to the suit by the Farmers Bank of Commerce to foreclose its vendor's lien on said land.

The chancellor found that the assignment of the purchase money notes to the banks as collateral security for the amounts due respectively by Ward operated as a transfer of the vendor's lien; that the attempt to satisfy the vendor's lien by the reconveyance of Manwaring to Ward did not in any way impair the lien of the banks which held the purchase money notes as collateral security and that the lien of said banks was superior to the lien of the mortgage transferred by the American Trust Company to Gertrude M. Sowel and was, also, superior to any right of W. A. Cope and that J. T. Manwaring was liable to the banks for the respective amounts due them.

It was therefore decreed that the banks had a superior lien to any of the defendants on the land in question, and that J. T. Manwaring be held primarily liable for the amount of the indebtedness due the banks. The decree was entered of record October 16, 1918, and a sale of the property was held in abeyance until the first day of December, 1919, the date of the maturity of the notes of Manwaring to Ward given for the purchase price of the land.

The defendant, J. T. Manwaring, alone has appealed.

*H. M. Mayes,* for appellant.

A bond for title or agreement to sell land, is not a conveyance — is wholly executory — though it contains the words "grant, bargain and sell," and produces no effect upon the title or estate of the parties and creates no lien or charge on the land itself. 1 Bouvier Law Dict. (Rawles' 3rd Rev.), p. 1151; 32 Pa. 287; 37 *Id.* 201; 78 Am. Dec. 414; 35 W. Va. 463; 14 S. E. 249; 2 Blackst. Com., § 443. The title does not pass and it is not even color of title; it is only an executory contract to make

title in the future upon performance of certain conditions. 67 Ark. 184; 47 *Id.* 528; 18 Howard, 56; 50 Ark. 484. Our court clearly distinguishes as to the legal effect of notes hypothecated on a bond for title and a deed. 44 Ark. 192. See also 21 *Id.* 235; 23 *Id.* 639; 38 *Id.* 127. If the title fails or cannot be made, the consideration fails and non-fulfillment of the conditions of the bond is sufficient defense to a suit on the purchase money notes. 60 Ark. 43; 2 Warville on Vendors, etc., 922; 11 Ark. 58; 21 *Id.* 239; 51 *Id.* 333.

Appellant was never in default and no action would lie against him until he either defaulted the payment of interest or assessments or principal, which was not due until December 1, 1919, but here the vendor, the Wards, had accepted a reconveyance from Manwaring and had transferred their interest to a subsequent purchaser, and therefore the vendor would not be entitled to maintain an action against the original vendor, the obligation having been canceled and the bond for title being an executory contract and placed of record, the banks now seeking to enforce liens accepted these notes with notice. 39 Ark. 307; 7 *Id.* 208. The Bank of Benton is thus barred of any relief against Ward. The Farmers Bank was also affected with notice and cannot recover. The demurrers should have been sustained and the action dismissed. Cases *supra.*

*Hawthorne & Hawthorne* and *D. K. Hawthorne,* for appellees.

Where land is sold and notes for the purchase money and bond for title given, the vendor is a trustee holding the legal title for the vendee. 71 Ark. 164. See also 84 *Id.* 41; *Id.* 160-8; 49 *Id.* 468; 128 *Id.* 462; 60 *Id.* 90. The maker of a negotiable note takes the risk of payment of it to the payee and is not discharged from his obligations to the holder thereof after it is transferred. 115 Ark. 366. Where land is sold with a recital in the conveyance that notes were given for the purchase money, all subsequent purchasers take subject to the lien of any inno-

cent holder of the notes for value received, notwithstanding any attempted release of the lien before the assignment of the notes, and the land here could be sold, and the decree below is in all things correct and should be affirmed. Cases *supra*.

HART, J., (after stating the facts). The decision of the chancellor was correct. It is well settled in this State that where the owner sells land to another and executes a bond for title, the effect of the contract is to create a mortgage upon the land in favor of the vendor to secure the purchase money subject to all the incidents of a mortgage as effectually as if the vendor had conveyed the land by absolute deed to the vendee, and had taken a mortgage back to secure the purchase price. It is equally well settled that, upon the failure of the vendee to pay in accordance with the terms of the contract, the vendor may proceed by a bill in equity to foreclose the equity of redemption and sell the lands for the payment of the debt. *Higgs* v. *Smith,* 100 Ark. 543, and cases cited.

The lien of Ward upon the 160 acres of land in question to secure the purchase money notes executed to him by Manwaring, was in the nature of a mortgage, and when he transferred the notes to the Bank of Benton and the Farmers Bank of Commerce to secure the amounts which he had borrowed from them, the lien passed with them and the banks had the right, by subrogation, to foreclose the lien. *Martin* v. *O'Bannon,* 35 Ark. 62, and *Calhoun* v. *Ainsworth,* 118 Ark. 316. These principles are conceded; but counsel for Manwaring claims that the vendor's lien on the land in question was terminated because Ward had by a deed from Manwaring taken back the land. It is claimed that the effect of the reconveyance was to extinguish the vendor's lien on the land.

It is true the general rule is that where one having a vendor's lien on land becomes the owner of both the legal and equitable title by reconveyance, the lien is extinguished, still there are exceptions to the rule, and this is one of them. The purchase money notes given by Manwaring to Ward were transferred before their maturity

respectively to the Bank of Benton and the Farmers Bank of Commerce as collateral security for an amount of money which Ward had borrowed from each bank. While Ward was still indebted to each bank and the notes were in the possession of the banks as collateral security for his indebtedness, Manwaring reconveyed the land to Ward and attempted to cancel the notes which he had executed to Ward for the purchase price of the land. This he could not do. So far as the banks were concerned there could be no merger of the legal and equitable title in Ward by a reconveyance of the land to him by Manwaring. Manwaring knew that the notes given by him to Ward for the purchase price of the land were outstanding and not yet due at the time he reconveyed the land to Ward. Therefore, in order to protect himself, he should have required Ward to have surrendered the notes to him before or at the time he executed the deed to Ward. *Driver* v. *Lacer,* 124 Ark. 150. Manwaring alone has appealed, and it is unnecessary to consider the correctness of the decision of the chancellor as to the other defendants.

It follows that the decree must be affirmed.