ROBBINS *v.* FULLER.

Opinion delivered April 4, 1921.

1. FRAUDULENT CONVEYANCES—BULK SALES LAW—STORE NOT A "FIXTURE."—Under the Bulk Sales Law (Crawford & Moses' Dig., § 4870), rendering void the sale in bulk of any part, or of the whole stock, of merchandise and the fixtures pertaining to the conduct of a mercantile business otherwise than in the ordinary course of trade, unless the provisions of that act are complied with, *held* that a store building in which a mercantile business is conducted is not a "fixture" within the statute.

2. FRAUDULENT CONVEYANCES—KNOWLEDGE OF INSOLVENT'S CONDITION.—A finding that certain conveyances from an insolvent son to his father of land for inadequate consideration were fraudulent will be sustained where the circumstances warranted the inference that the father at the time of the purchase knew of his son's insolvent condition.

3. VENDOR AND PURCHASER—TITLE BOND—EFFECT.—The effect of an agreement to sell land and the execution to the purchaser of a bond for title is to create a mortgage on the land in favor of the vendor to secure the balance of the purchase price; the purchaser becoming the equitable owner.

4. VENDOR AND PURCHASER—ASSIGNMENT OF CONTRACT.—Where a purchaser of land under an executory contract directed the vendor to execute deed to his father, the effect of the transaction was an assignment of the purchaser's equitable interest to his father.

5. FRAUDULENT CONVEYANCES—EFFECT OF CONVEYANCE VOLUNTARY IN PART.—Where a conveyance is only constructively fraudulent, as where it is in part voluntary, it will be allowed to stand as security for the money advanced by the grantee to pay off incumbrances.

6. FRAUDULENT CONVEYANCES—CONVEYANCE IN PART VOLUNTARY.—While a deed to a father of his insolvent son's land for an inadequate consideration is fraudulent as to the son's creditors, it will be allowed to stand as security for the amount paid by the father on the purchase price of the land; but, on the son's creditors reimbursing the father for the amount so paid, the land will be sold for the benefit of the creditors.

Appeal from Montgomery Chancery Court; *J. P. Henderson,* Chancellor; affirmed.

STATEMENT OF FACTS.

C. M. Fuller and others brought this suit in equity against W. O. Robbins and B. Robbins to set aside the sale by W. O. Robbins to B. Robbins, of lots 2 and 3, in block 22, in the town of Womble, as in violation of the bulk sales law. Subsequently the complaint was amended so as to allege that the sale of said lots was made with the intent to hinder and defraud the creditors of W. O. Robbins in the collection of their debts against him.

The defendants denied the material allegations of the complaint.

According to the testimony of W. E. Womble, W. O. Robbins made a contract with him to purchase lot number 2, in block 22, in the town of Womble, and Womble executed to Robbins a bond for title. A storehouse was situated on the lot, and Robbins carried on a mercantile business in it. Subsequently Robbins borrowed some money from Womble and gave him a mortgage on the building that was on the lot, and, in order to make him more secure, surrendered to him the bond for title. Womble, however, felt that he was under obligations to make a deed to W. O. Robbins upon the payment of the purchase price and the mortgage indebtedness. In January, 1919, B. Robbins, the father of W. O. Robbins, proposed to Womble that he would pay off his son's debt if Womble would make a deed to the lot to him. Womble agreed to do this if it was all right with W. O. Robbins. W. O. Robbins also agreed to it, and then Womble executed a warranty deed to the lot to B. Robbins. B. Robbins paid to Womble $425, which was the balance due Womble by W. O. Robbins. The lot and building was worth about $800 at the time Womble executed the deed to B. Robbins. Womble was threatening to foreclose his lien on the building and lot at the time B. Robbins procured him to make the deed to the lot to him. In January, 1920, the property was worth $1,000. Lot 3, in block 22, in the town of Womble was worth $150 or $200, in January, 1919.

Another witness testified that W. O. Robbins borrowed $410 from him in the fall of 1918, and told him that he would be closed up if he could not borrow some money.

A witness stated that W. O. Robbins' store was close to his store, and that B. Robbins was at the store of W. O. Robbins almost daily, and that he frequently saw father and son in close and apparently earnest conversation.

Other evidence showed that Robbins was insolvent all during the month of January, 1919, and that he closed

his business on account of insolvency on about the first of February, 1919.

According to the testimony of B. Robbins, in addition to the sum of $425, which he paid Womble when he bought said lot 2 on which was situated the storehouse in which his son carried on his business, he also paid his son an additional consideration of $85. He had, also, gone on the note of his son at the bank for $500 and later had to pay off this note. His son was indebted to him at the time he purchased said lot 2, on the 5th day of January, 1919. On the same day he bought the adjacent lot, which is number 3, and which is vacant. He bought lot 3 from W. O. Robbins and agreed to allow him $50 on his indebtedness as the purchase price.

The chancellor found that W. O. Robbins was still the equitable owner of said lots numbers 2 and 3, in block 22, in the town of Womble, Arkansas, and that B. Robbins, having paid to W. E. Womble the balance of the purchase price for lot number 2, stood in the position of an equitable assignee to the extent of $425, the amount paid to W. E. Womble.

The court further found that the creditors of W. O. Robbins might subject said property to the payment of their debts, and that the deed from W. O. Robbins to B. Robbins to said lot 3 should be canceled.

It was therefore decreed that B. Robbins should have a lien on lot 2 for $425, and that, upon payment of said amount by the creditors, lots 2 and 3 should be sold for the payment of their debts.

The creditors, who are the plaintiffs in this action, tendered B. Robbins in open court the sum of $425 which B. Robbins refused. The plaintiffs kept the tender good by paying that amount in United States currency into the registry of the court.

The case is here on appeal.

*Gibson Witt,* for appellants.

When all the facts and circumstances in this case are considered, it is clear that B. Robbins had a clear,

legal right to purchase both lots, and that he paid full value for them.

Inadequacy of price alone is not sufficient to establish fraud. 118 Ark. 229. It is the intent that makes the conveyance fraudulent, and the fraudulent intent must be participated in by both parties. 31 Ark. 554; 41 *Id.* 316; 63 *Id.* 232.

A creditor may purchase of an insolvent debtor in satisfaction of his debt. 60 Ark. 425; *Ib.* 63, 412. At the time B. Robbins purchased lots 2 and 3, no one thought W. O. Robbins was financially embarrassed, so far as the evidence discloses. The decided weight of the testimony shows that B. Robbins was by far the largest creditor of W. O. Robbins, and that B. Robbins did nothing to hide or conceal his transactions, and that he had a moral and legal right to purchase lot 3 on his own account.

*Isaac L. Autrey,* for appellees.

1. No sufficient abstract was filed by appellant.

2. The sale of lots was void, under act 88, Acts 1913.

3. Under the amendment to the complaint the sale of the lots should be canceled as in fraud of creditors. 73 Ark. 174; 71 *Id.* 161; 86 *Id.* 225; 56 *Id.* 73.

Every voluntary conveyance of property by an embarrassed debtor is fraudulent as to existing creditors. 50 Ark. 46. If he is insolvent, the persumption of fraud is conclusive. 52 Ark. 493; 55 *Id.* 116; 59 *Id.* 614; 69 *Id.* 224; 76 *Id.* 509.

Where the title to land passes by delivery and acceptance of a deed of conveyance, the same can not be revested in the grantor by surrender or cancellation of the deed. 80 Ark. 11; 21 *Id.* 80; 42 *Id.* 170; 43 *Id.* 203; 52 *Id.* 493; 53 *Id.* 509.

When the owner sells land, takes the notes of the vendee for the purchase money and executes a bond for title to the vendee, the effect is to create a mortgage on the land to secure the purchase money. 13 Ark. 533; 27 *Id.* 61; 29 *Id.* 357; 34 *Id.* 126; 14 *Id.* 633. See, also, 15

*Id.* 188; 91 *Id.* 33; Browne on Statute of Frauds, § 229; 7 Cranch. 176.

HART, J. (after stating the facts). It is first insisted that the conveyance of lot 2 on which the store building was situated was void because it was in violation of our bulk sales law. Under it the sale in bulk of any part of, or the whole stock of merchandise and the fixtures pertaining to the conduct of any such business otherwise than in the ordinary course of trade is void against the creditors of the seller, unless the provisions of the act in regard to such sale are complied with. Crawford & Moses' Digest, section 4870.

It is contended that the storehouse is a fixture under the statute. The statement of the proposition negatives its soundness, and we need only say that the statute refers to the trade fixtures connected with the business and not to the building in which the business is carried on. The building itself is a part of the ground on which it is situated.

It is also sought to set aside the conveyance of lots 2 and 3 in block 22 in the town of Womble, on the ground that they were made in fraud of creditors, and in this contention we think counsel is correct.

In regard to lot 3, but little need be said. W. O. Robbins made a deed to it to his father, B. Robbins, on the 5th day of January, 1919, and closed his store on account of insolvency on the first of February of the same year. His father allowed him $50 for the lot to be applied on the indebtedness which the son owed the father. The evidence showed the lot was worth from $150 to $200. The father visited the store of his son almost daily, and father and son were seen in frequent and apparently earnest conversations.

It is fairly inferable, under the circumstances, that the insolvent condition of the son must have been known to the father at the time he made the purchase, although the father denies this to be the fact. Therefore, the court was correct in holding the conveyance fraudulent. *Den-*

*nis* v. *Ball-Warren Commission Company,* 72 Ark. 58, and *Godfrey* v. *Herring,* 74 Ark. 186.

The chancellor was also correct as to his finding with regard to lot 2. This was the lot upon which the storehouse in which W. O. Robbins carried on his business was situated.

W. E. Womble, who sold the property to W. O. Robbins, testified that it was worth $800. For the reasons above given, B. Robbins must have known that his son was insolvent at the time that it was agreed that the deed to said lots should be made to him upon the payment to Womble of the balance of the purchase money. The transaction was had at a time when Womble was threatening to foreclose his lien and when the undisputed proof shows that W. O. Robbins was insolvent. The only other consideration paid was the sum of $85 which B. Robbins said that he allowed to his son for Womble on the son's indebtedness to him.

W. O. Robbins owed Womble $425 as balance of the purchase money. When Womble agreed with W. O. Robbins to sell him lot 2 and executed to him a bond for title, the effect of the contract was to create a mortgage upon the lot in favor of Womble to secure the balance of the purchase money. *Manwaring* v. *Farmers' Bank of Commerce,* 139 Ark. 218. When W. O. Robbins purchased lot 2 and received a bond for title from Womble, he became the equitable owner of the lot, and his executory contract was assignable in equity. *Corcorren* v. *Sharum,* 141 Ark. 572.

Therefore when he agreed that Womble should make the deed to his father upon the payment by the latter to Womble of the balance of the purchase price, the effect of the transaction was the assignment by W. O. Robbins of his equitable interest in the lot to his father. The lot was worth substantially more than the balance of the purchase price due upon it, and the sale under the circumstances detailed above was in fraud of the creditors of W. O. Robbins. See, in addition to the authorities above cited, *Wilks* v. *Vaughan,* 73 Ark. 174.

B. Robbins paid the balance of the purchase price at the time the conveyance was executed to him.. The payment was made with money of his own, and he had an equity to be substituted to the rights of Womble to that extent.

It is well settled that when a conveyance is only constructively· fraudulent as, for instance, where it is in part voluntary—it will be allowed to stand as security for the money advanced by the grantor to pay off incumbrances.

In *Boyd* v. *Dunlap*, 1 Johns. Ch. 478, Chancellor Kent states the law on this question as follows: "A court of law can hold no middle course. The entire claim of each party must rest and be determined, at law, on the single point of the validity of. the deed; but it is an ordinary case, in this court, that a deed, though not absolutely void, yet, if obtained under inequitable circumstances, should stand only as a security for the sum actually due. * * * A deed, fraudulent in fact, is absolutely void, and is not permitted to stand as a security for any purpose of reimbursement or indemnity; but it is otherwise with a deed obtained under suspicious or inequitable circumstances, or which is only constructively fraudulent."

In *Clements* v. *Moore,* 6 Wall. U. S. 299, Justice Swayne states the law as follows: "When the proceeding is in chancery, the jurisdiction exercised is more flexible and tolerant. The equity appealed to, while it scans the transaction with the severest scrutiny, looks at the facts, and, giving to each its due weight, deals with the subject before it according to its own. ideas of right and justice. In some instances it visits the buyer with the same consequences which would have followed in an action at law. In others it allows a security to stand for the amount advanced upon it. In others it compels the buyer to account only for the difference between the under price which he paid and the value of the property. In others, although he may have paid full value, and the property may have passed beyond the reach of the court, it regards him as trustee, and charges. him accordingly.

When he has honestly applied the property to the liabilities of the seller, it may hold him excused from further liability. The cardinal principle in all such cases is that the property of the debtor shall not be diverted from the payment of his debts, to the injury of the creditors, by means of the fraud.''

Many other cases of proving the rule are cited in a case note to 8 A. L. R. at pp. 535-536.

As we have already seen, lot 2 was worth at least $800, and the father only agreed to pay the balance of the purchase price, which was $425, and the sum of $85 to his son. Under the circumstances there was a considerable inadequacy of price, and the court correctly allowed the deed to stand as security only for the $425 and ordered the lot sold in payment of the creditors of W. O. Robbins upon their reimbursing B. Robbins for the amount advanced by him.

The plaintiffs, who are the creditors of W. O. Robbins, deposited $425 in the registry of the court upon the refusal of B. Robbins to accept that amount when it was tendered to him.

It follows that the decree must be affirmed.