J. I. Porter Lumber Company *v.* Bonner.

Opinion delivered February 7, 1927.

1. Limitation of actions—vendor's lien.—A note for the purchase price of land, which fell due more than five years before the commencement of an action to enforce a vendor's lien, the vendee holding under bond for title, was not barred by the statute of limitations as against the holder of the note by assignment from the vendor.

2. Bills and notes—innocent purchaser.—One who takes a negotiable note by assignment for value before its maturity is an innocent purchaser, though the assignment was to cover an antecedent indebtedness.

3. Vendor and purchaser—rights of assignee.—Under assignment of notes given for the purchase of land, the assignee acquired all the rights of the vendor.

4. Vendor and purchaser—payment to assignor of notes.—Where notes were assigned before maturity, the assignee was not bound by subsequent payments to the assignor, where the original holder did not have possession of the notes at the time and was not authorized by the assignee to collect them.

5. Bills and notes—payment.—In an action by the assignee of notes against the makers, evidence *held* not to support a finding that the makers had paid the original holder.

Appeal from Cleveland Chancery Court; *H. R. Lucas,* Chancellor; reversed.

*Woodson Mosley,* for appellant.

*George Brown,* for appellee.

McCULLOCH, C. J.   Appellant, a domestic corporation with its principal place of business at Stuttgart, Arkansas, was the owner of a large body of land in Cleveland County, containing 13,600 acres, and on September 15, 1913, executed to one Blodgett a contract to convey same at a stipulated price to be thereafter paid, and undertaking to execute a deed or deeds upon the payment of the price.   The contract contained a stipulation permitting Blodgett to obtain a separate conveyance from appellant, conveying parts of the aggregate acreage, on resale to other parties and payment of the price to appellant.   The details of this contract were set forth in a recent decision.   *Wilms* v. *Dedman,* p. 783.

Blodgett organized a corporation, of which he was president and manager, known as the Western Land Company, and made a quitclaim deed to that corporation, which operated as a sale of his interest in the contract with appellant.   Thereafter, on December 27, 1915, the Western Land Company entered into an executory contract with appellee, Victor E. Bonner, for the sale of one hundred and twenty acres of the land embraced in the Blodgett contract for the total purchase price of $1,800, payment of $600 of which was acknowledged in the contract and the balance of $1,200 was evidenced by eight equal promissory notes, payable annually, beginning December 27, 1918.   These notes were subsequently delivered by the Western Land Company and Blodgett to appellant in settlement of certain indebtedness under the original contract, the notes bearing indorsement of assignments to J. M. Cox, on September 1, 1917, and J. M. Cox's subsequent assignment to appellant.   There were no credits indorsed on the notes, and appellant instituted this action against Bonner on February 16, 1924, in the chancery court of Cleveland County, to recover the amount of the notes and to enforce a lien as vendor of the land embraced in the contract from the Western Land Company to Bonner.   Mrs. Bonner, wife of Victor E. Bonner, was made a party defendant at her own request, and both of the defendants joined in an

answer pleading payment, and also pleading bar of the statute of limitation.  The court heard the cause on oral testimony and documentary proof evidencing the contract between the parties, and dismissed the complaint of appellant for want of equity.  The court made special findings in the decree that the notes had been paid and discharged.

Counsel for appellees also insist here on the defense of the bar of the statute of limitations against the notes, and we will first dispose of that question.  Two of the notes, the one falling due on December 27, 1924, and the other December 27, 1925, matured after the commencement of this action, but all of the notes recited that they constituted a series, and each contained an accelerating clause, which made them all due at the option of the holder.  The first note, which fell due December 27, 1918, was the only one of them which matured more than five years before the commencement of the action, but even that note was not barred as against the vendor of appellee or the holders of the note by assignment from the vendor.  *Tillar* v. *Clayton*, 76 Ark. 405, 88 S. W. 972; *Perry* v. *Arkadelphia Lumber Co.*, 83 Ark. 374, 103 S. W. 724; *Little Rock & Fort Smith Ry. Co.* v. *Rankin*, 107 Ark. 487, 165 S. W. 431; *Wilm* v. *Dedman, supra.*

Now, as to the plea of payment, we are of the opinion that the trial court erred in its finding, and that the decree should be reversed on that ground.  The undisputed testimony shows that the notes were assigned to appellant for the purpose of settling an indebtedness of Blodgett to appellant under the original contract.  Blodgett testified to that effect, and it is undisputed.  The indorsements show that the assignments were made by the Western Land Company September 1, 1917, which was before maturity of the first note.  Appellant was therefore an innocent purchaser for value, even though the assignment was to cover an antecedent indebtedness.  *Newell Construction Co.* v. *McConnell*, 156 Ark. 558, 246 S. W. 854.

Under the assignment, appellant acquired all the rights of the vendor of appellee. *Rodman* v. *Sanders,* 44 Ark. 504; *Manwaring* v. *Farmers' Bank of Commerce,* 139 Ark. 218, 213 S. W. 407.

Payments, if any were made at all, were to Blodgett long after the assignments of the notes to appellant, and there is no testimony at all that Blodgett had possession of the notes at the time, or that he was authorized by appellant to make collection. Under those circumstances, appellant was not bound by payment made to Blodgett. *Koen* v. *Miller,* 105 Ark. 152, 150 S. W. 411.

The testimony very clearly preponderates, we think, against the finding of the trial court that the payments claimed by appellees were made to Blodgett. Bonner and his wife both testified concerning those payments, and that was the only testimony they offered on the subject. Their testimony is inconsistent and inherently weak. They claim to have paid large sums, in the aggregate more than the amount of the indebtedness. They testified to a great many payments in small amounts, from a few dollars to several hundred; then they testified to a cash payment of $1,000, for which they say Blodgett gave them a receipt and afterwards purloined it, but no such receipt was produced. They claim they met Blodgett in Pine Bluff for the purpose of settling; that they called for the notes, and Blodgett assured them he would treat them right; and that they made a payment of $1,000 in currency, without the production of the notes, merely upon Blodgett's promise that he would produce the notes and make a deed. This was contradicted by Blodgett, who testified that the payment of $1,000 was not made to him; that the transaction did not occur at all; that nothing had been paid on the notes except a credit of something less than $50 for a fee due to Bonner for acting as auctioneer in the sale of three mules. Mr. Culpepper, the secretary, testified about the notes, and stated that nothing had been paid on them, but there was to be a credit of $28 for auctioneer's service. E. L. McClendon, circuit clerk, who appears not to have had

the slightest interest in the controversy, testified that, just after this action was commenced by appellant against Bonner, the latter stated to him that he had not paid anything on the land except the first payment; that that amounted to no more than the rent would be up to the time of the decree, and that he was not going to contest the suit. The testimony of appellee is, as we have already said, entirely without any corroboration. We have the testimony of Blodgett and Culpepper, which is corroborated by Mr. McClendon's testimony concerning appellee's admission that he owed the debt. With this state of the proof there is no escape from the conclusion that the preponderance of the testimony is clearly in favor of appellant, that no payment has been made on the notes. For each of these reasons there must be a reversal of the judgment, and it is so ordered, with directions to enter a decree in favor of appellant for the recovery on the notes, with interest, and for the enforcement of same as a vendor's lien on the land described in the complaint.