LEWIS BROWN COMPANY, INC., v. NEELY MALLORY.

Western Section.  June 22, 1928.

No petition for Certiorari was filed.

Winchester & Knapp, of Memphis, for plaintiff in error.
Edward P. Russell, of Memphis, for defendant in error.

OWEN, J. The Lewis Brown Company, a corporation, hereinafter called defendant, has appealed from a judgment rendered against it in the circuit court of Shelby county, in the sum of $1200. Hereafter, Neely Mallory will be referred to as plaintiff.

It appears that the defendant had a judgment against the Memphis Iron and Steel Company. An execution was issued on this judgment, which execution was levied on certain iron described in plaintiff's declaration. The sheriff and his deputy removed the iron which they had levied on at defendant's insistence and over the protest of the plaintiff. At the time this iron was levied on it was on the property of Conley Frog & Switch Company in South Memphis, it had been moved by the plaintiff from the plant of the Memphis Iron and Steel Company, which plant is located in North Memphis. Plaintiff's suit was for a conversion, he also sued W. S. Knight, sheriff of Shelby county, and his deputy, John Sailors. The defendants filed pleas of not guilty. The issues were tried to a jury. At the conclusion of all evidence the plaintiff dismissed his suit as to the sheriff and his deputy. The defendant made a motion for a directed verdict which was overruled. After the verdict was returned the defendant seasonably filed a motion for a new trial which was overruled, prayed and perfected an appeal to this court and has assigned thirteen errors. These errors make the following insistences that the court erred in not granting a directed verdict:

1. Because the property in controversy was taken in possession by the sheriff under a valid execution and before the sheriff could sell the property under the execution, this suit was brought and the sales were delayed pending the outcome of this suit.

2. The defendant had never asserted ownership of the property in controversy, in that it was holding its subject to the orders of the sheriff, who was holding it.

3. The plaintiff and the Memphis Iron & Steel Company, the judgment debtor of defendant, was engaged in a partnership and the property levied upon was owned by the partnership, therefore, the property was subject to the debt of the Memphis Iron and Steel Company.

4. The mortgage under which the plaintiff claimed title to the property levied on was not a recorded mortgage.

5. The Memphis Iron & Steel Company and plaintiff did not comply with the Bulk Sales Law, therefore, the property sued for was subject to the debt of the Memphis Iron & Steel Company.

6. The invoice relied on by plaintiff was not for the purpose of conveying the absolute title of the property to plaintiff but at the time it was given it was the intention of the parties to give him this property as security for their debt and did not constitute an outright sale, therefore, as against execution creditors it stands on no higher ground than an unrecorded mortgage.

7. The sale from the Memphis Iron & Steel Company to plaintiff was in violation of chapter 125 of the Acts of 1919.

8. There is no evidence to support the verdict.

9. Refusing defendant's special request as follows:

"If you find that the plaintiff, Neely Mallory, left in the possession of the Memphis Iron & Steel Company the property he now claims to have purchased with authority in the Memphis Iron & Steel Company to offer said property for sale as its property, then I charge you as to creditors of the Memphis Iron & Steel Company the sale by the Memphis Iron & Steel Company to the plaintiff Mallory was void as to creditors unless the instrument upon which the plaintiff relies was recorded, and, therefore, the plaintiff cannot recover from the defendant."

These nine propositions cover the defendant's thirteen assignments of error. The trial judge explained the theories of the plaintiff and defendant as follows:

"The theory of the plaintiff in this case is that Lewis Brown Company pointed out this particular property through one of its agents who went with this deputy sheriff, and said, 'Levy upon that iron there,' Now, then, if that happened, Lewis Brown would be liable for conversion, if that property was not the property of the Memphis Iron & Steel Company, but was the property of Mr. Mallory, because the Lewis Brown Company would have actively participated in the wrongful levy.

"The defense relied upon by the defendant is, first, that this property really was not the property of Mallory, but was the property of this Memphis Iron & Steel Company. They further claim that even if it was Mr. Mallory's property, that they would not be liable, because Mr. Mallory is estopped to claim it as his property, for the reason, as the defendants claim, that Mr. Mallory actively led these people·to believe that it was the property of this Memphis Iron & Steel Company. If one of you gentlemen, to illustrate that point, owned an automobile, and an execution was levied against me, and the officer, thinking he was levying upon my property, undertook to levy upon your automobile, and you stood idly by and did not tell him it was your property, even though it was your property, you would be forbidden by the courts to set up a claim to it, if you stood by and did not speak at the time, as you should have spoken. So the defendant's theory is that Mr. Mallory knew that the Memphis Iron & Steel Company was offering his property for sale under their name, not mentioning his name, claiming it as theirs, and that he should have spoken up then and said it was his. The defendant claims that Mr. Mallory went further than that, and that at the very time this officer was down there, about to make this levy, and was still down where this iron was located, the defendants claim that Mr. Mallory called up Mr. French, one of the officers of the defendant company, and told him that he had a mortgage on the property, and did not tell him that he owned it. Well, if a man owns anything, he does not have a mortgage on it. A person cannot have a mortgage on anything that he already owns.

"Mr. Mallory on the other hand, claims that he made no such statement over the telephone to Mr. French; that he did not tell Mr. French that he had a mortgage on this, but he told him that it was his property, and at that time Mr. French was representing the Lewis Brown Company."

There is a sharp conflict in the evidence between the plaintiff and his witnesses and the defendant and its witnesses, the jury has resolved this conflict in favor of the plaintiff and we find material evidence to sustain the plaintiff's contentions. We find that the property levied on by the deputy sheriff and carried away by the defendant was the plaintiff's property. It had been delivered to him by the Memphis Iron & Steel Company on an indebtedness that said company had owed the plaintiff for many months. The plaintiff had bought the iron at $40. a ton and when purchased, the plaintiff had moved it from the Memphis Iron & Steel Company's plant to the plant of Conley Frog & Switch Company, or from South Memphis to North Memphis. The two plants were about six or seven miles apart. Plaintiff gave the Memphis Iron & Steel Company credit on his indebtedness against said

company for the amount of iron he received. This sale to the plaintiff was September 30, 1926, the execution was levied in March, 1927. The unrecorded mortgage spoken of, was dated August 20, 1926. Plaintiff is not entitled to recover under the instrument dated August 20, 1926, but relies upon the sale to him September 30, 1926. The plaintiff and the Memphis Iron & Steel Company were not partners and no partnership existed between the plaintiff and the Memphis Iron & Steel Company.

The next proposition is in regard to the application of the Bulk Sales Law. The iron sold to the plaintiff was a manufactured product such as bar iron used by railroad companies. Does a manufactured article sold by the manufacturer come within the terms of the Bulk Sales Law?

In the case of Neas v. Borches, 109 Tenn., 298, our Bulk Sales Law was considered. The caption of the Act is as follows:

"An Act to Provide the Terms Upon Which Sales in Bulk of Stocks of Merchandise, or of any Portion Thereof Otherwise Than in the Ordinary Course of Trade may be Made.

"Section 1. Be it Enacted by the General Assembly of the State of Tennessee that a sale of any portion of a stock of merchandise otherwise than in the ordinary course of trade in the regular and usual prosecution of the seller's business, or a sale of an entire stock of merchandise in bulk, shall be presumed to be fraudulent, etc."

In this case of Neas v. Borches, a small merchant purchased merchandise from two wholesale merchants. One of the merchants made demand for pay, and the retailer gave him his entire stock of shoes in payment of the debt. The other merchant then attached the shoes, claiming that the sale was in violation of the Bulk Sales Law. The Supreme Court held that the Bulk Sales Law was applicable as the retailer was engaged in business as a retail merchant, selling shoes, clothing, hats, etc., and the Act was passed for the purpose of controlling such parties.

The Supreme Court, when delivering its opinion, recognized in the following language that the Act has no application to manufacturers. It was said:

"It is said in the first place that the Act is class legislation, in that it applies alone to merchants dealing in merchandise, and not to other persons, such as farmers, stock dealers, manufacturers, traders and persons engaged in other business than the sale of merchandise. Admitting this, in reply it is said that the statute is a mere regulation of the mercantile business, designed to secure to creditors of merchants a just participation in the distribution of the assets of such merchants, and to prevent fraudulent performances and practices by them, and is valid exercise of the police power of the state.

"The majority of the court is of the opinion that the Act in question is valid and constitutional; that it was intended to prevent the practice of fraudulently selling out goods to the injury of creditors by merchants; that it is merely a regulation of the business of merchandising; that it is not class legislation, and that the limitation of the Act to merchants is not arbitrary classification, etc."

Another case is Strauss Cigar Co. v. Bon Marche, 142 Tenn., 131, in which the Supreme Court said:

"The great weight of authority and the better reasoning lead us to the conclusion that the purpose of the legislature was to regulate the sale of such articles only as the merchant keeps for sale in the ordinary course of his business, and the statute therefore has no application to fixtures employed in connection with the business."

In the case of H. D. Bozeman v. Mrs. John J. Naff, 5 Tennessee Appeal, 77, the middle section on April 2, 1927, passed upon this question, and held that the Bulk Sales Law is not applicable to a sale by a manufacturer. In this case a manufacturer of money bags sold out everything without complying with the Bulk Sales Law. On this point, this court, said:

"By the second assignment of error it is insisted that H. G. Husband who purchased the assets of the corporation is not liable, as the sale was not in violation of the Sales in Bulk Statute. We think this assignment of error should be sustained, as this was not a sale of a stock of merchandise. The statute applies only to sales in bulk of a stock of merchandise, or any portion of the stock. Cigar Co. v. Bon Marche, 142 Tenn., 129, 218 S. W., 219; Henderson Co. v. Breeden Bros., 148 Tenn., 281, 255 S. W., 359. It has been held in many cases decided by the courts of other states, where that statute is in force, that the statute does not apply to sales of articles by manufacturers, farmers or hotelkeepers, etc., unless they come within the designation of 'a sale of stock of merchandise.' See Nichols, etc. Co. v. Canneries (Wis.), 41 A. L. R., 1211; 27 C. J., 878; 12 R. C. L., 525-7. It results that this assignment of error is sustained, and that the judgment against H. G. Husband is reversed."

The cases of Tamey-Milburn Co. v. Sevick, 159 Ark., 358, 252 S. W., 20, decided in 1923, is in point, holding that the Bulk Sales Law has no application to a manufacturing concern and a sale by that concern. In that case, the owner of several sawmills sold all of his mills, together with the logs and lumber on the yards, and a creditor attached the sale as in violation of the Bulk Sales Law, as no notices were given. The Supreme Court said:

"It is also contended that the sale is void because it falls within our statute commonly known as the 'Bulk Sales Law,' Crawford & Moses' Digest, Sec. 4870, et seq. The statute in question is entitled, 'An act to prevent the fraudulent sales of stocks of merchandise,' and the first section provides that sales or transfers 'in bulk, of any part of or the whole of a stock of merchandise or merchandise and the fixtures pertaining to the conduct of any such business, otherwise than in the ordinary course of trade and in the regular prosecution of the business of the seller,' shall be void unless a notice to the creditors be given and the sale otherwise be made in accordance with the terms of the statute. It is clear from the language used that the purpose was to regulate bulk sales of merchandise as a part of the stock of mercantile establishment. It has no application to a manufacturing plant which sells its product merely as an incident to the business. That was evidently the thought in the minds of the court in the cases of Fiske Rubber Co. v. Hayes, 131 Ark. 248, 199 S. W. 96, and Robbins v. Fuller, 148 Ark. 173, 229 S. W. 8, though the precise question now under consideration was not involved in that case. Other courts have so interpreted similar or identical statutes. Balter v. Crum, 199 Mo. App. 380, 203 S. W. 507; Cooney, Eckstein & Co. v. Sweat, 133 Ga. 511, 66 S. E. 257, 25 L. R. A. (N. S.), 758; Wright v. Hart, 182 N. Y. 330, 75 N. E. 404. 2 L. R. A. (N. S.), 338; 3 Ann. Cas. 263; Everett Produce Co. v. Smith Bros., 40 Wash. 566, 82 Pac. 905, 2 L. R. A. (N. S.), 331, 111 Am. St. Rep., 979, 5 Ann. Cas., 798.

"In the present case the merchantable property consisted of logs and lumber of small value compared to the aggregate value of all of property conveyed, and it is quite clear, we think, that the Bulk Sales Law has no application to it."

As to the special request offered by the defendant, this was properly refused for two reasons; first, the plaintiff and the Memphis Iron & Steel Company were not partners, and second, the Memphis Iron & Steel Company was not trying to sell the iron, in controversy, as its property. The court had fully charged the jury on the issues between the plaintiff and the defendant.

"The action of trover being founded on a conjoint right of property and possession, any act of the defendant which negatives or is inconsistent with such right, amounts, in law, to a conversion. 2 Cooley on Torts, 859. A conversion does not depend upon a manual taking of the thing in question by the defendant. It is not necessary that it should be shown that he has applied it to his own use. The test is, does he exercise a dominion over it in exclusion or in defiance of the plaintiff's right? A conversion which will sustain trover must be a destruction of the plaintiff's property, or

some unlawful interference with his use, enjoyment or dominion over it.''

In 24 R. C. L., page 951, it is said:

''It is the generally accepted rule that if an officer, in executing a process, be a trespasser, those who aid him or act by his command are also trespassers, and must share with him in the consequences of the trespass. Hence, a creditor at whose instance a chattel is attached, becomes, together with the attaching officer, a trespasser ab inition where there is a subsequent delivery of the chattel to him by the officer or a use of it by him. For the same reason, persons giving an indemnity bond to a sheriff to induce him to levy an execution become liable as joint trespassers with him in case the seizure is wrongful.''

As to Chapter 125 of Acts of 1919, said Act is not applicable to the facts of this case and the plaintiff did not violate said Act when he purchased the iron, in controversy, from the Memphis Iron & Steel Company.

The jury having determined the issues in favor of the plaintiff, we find evidence to sustain his contention. There is no error in the charge of the court. It results that the assignments of error are overruled and disallowed, the judgment of the lower court is affirmed, the plaintiff will recover of the defendant the amount of the judgment rendered in the lower court with interest thereon from the date of its rendition for which execution will issue. Execution will issue against the defendant and its surety on appeal bond for the costs of the appeal.

Heiskell and Senter, JJ., concur.