# CHARLESTON.

### MARLOW v. RINGER *et al.*

Submitted January 23, 1917.    Decided February 6, 1917.

1. CONSTITUTIONAL LAW — *Fraudulent Conveyances — Statute — Due Process—Class Legislation—Freedom of Contract.*

     Section 3a, ch. 74, Code, known as the bulk sales law, is not invalid as class legislation, an illegal deprivation of property rights without due process of law, or an unlawful restraint upon the freedom or liberty of contract. It is a valid regulation in the exercise of the police power of the state to prevent and relieve from fraud against creditors. (p. 570).

2. FRAUDULENT CONVEYANCES—*Bulk Sales—What Constitutes—"Sale of Merchandise in Bulk."*

     The transfer by a retail grocery merchant of a half interest in his business and stock of goods to another, in consideration of his placing in the store a quantity of goods equal in value to the stock then owned by the merchant, with a view to the formation of a copartnership to continue the business at the same location, constitutes a "sale of merchandise in bulk", within the purview of the bulk sales law, "otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business", and is void *in toto* as against his creditors, except upon compliance with the conditions of that act. (p. 573).

3. CONFUSION OF GOODS—*Bulk Sales—Remedies of Creditor.*

     Where such void transfer has occurred, and the stock owned at the date thereof by the seller has become indistinguishably commingled with goods subsequently placed in the store by him and the purchaser to replenish the stock for current sales, a creditor of the vendor, whose claim antedated the sale agreement and is in part secured by a valid deed of trust on the fixtures and in part

- reduced to judgment against the debtor, may enforce the trust lien by a sale of the fixtures thereunder, and the judgment by a sale.of the commingled assets under an execution levied thereon. (p. 574).

Appeal from Circuit Court, Wood County.

Suit by D. B. Marlow against J. T. Ringer and others. From decree for defendants, plaintiff appeals.

*Affirmed.*

*Thomas Coleman,* for appellant.

*George H. Harris* and *Marshall & Forrer,* for appellees.

LYNCH, PRESIDENT:

On this appeal from a decree sustaining the constitutional validity of the bulk sales statute of this state, and declaring void as against the creditors of J. T. Ringer the purchase by D. B. Marlow of an interest in a stock of groceries,. it is necessary to determine whether that statute is within the legislative competency as not beyond the restrictions or limitations of any provision of the federal or state constitution, and, if not repugnant to either, whether upon the facts presented the transaction between plaintiff and Ringer violates the provisions of the act.

For some time prior to September, 1913, Ringer was engaged in the retail sale of groceries in the city of Parkersburg. In that month he and Marlow agreed to unite in the formation of a partnership to continue the business at the same location, Marlow to purchase and place in the store a quantity of goods equal in value to the stock owned by Ringer, each of them to participate equally in the results of the joint enterprise.

Without the actual knowledge of Marlow, the merchandise and fixtures of Ringer then were encumbered with the lien of a deed of trust, duly recorded, executed by him to secure to his co-defendant Wenmouth the payment of a $450 note due at six months. Nor was he then aware that Ringer was also indebted to Wenmouth in two other notes antedating the trust deed but not secured by any lien on the property. In the year 1915, the notes being past due and unpaid, Wen-

mouth attempted to enforce them by a sale under the trust, and by the levy of an execution issued upon a judgment obtained by him on the two unsecured notes. To enjoin such sales and commit the property to the custody of a receiver, and for other relief, Marlow brought this suit; and from a decree applying to the Wenmouth indebtedness the $275 realized from a sale of the merchandise and fixtures by the. receiver appointed, he has appealed.

In what respect the bulk sales statute, §3a, ch. 74, Code, offends against constitutional requirements is not pointed out with any degree of definiteness. In general terms it is contended that the statute is an illegal deprivation of a right of property without due process of law, or an unlawful restraint upon the liberty of contract, or a special law in violation of §39, art. 6, state constitution. This is the language of the act: ''The sale in bulk of any part or the whole of a stock of merchandise otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business, shall be fraudulent and void as against the creditors of the seller, unless the seller and purchaser at least five days before the sale make a written statement showing the nature and character of the sale and property to be sold and the price to be paid therefor, and unless the purchaser demands and receives from the seller a written list of names and addresses of creditors of the seller, with the amount of indebtedness due or owing to each and certified by the seller under oath to be to the best of his knowledge and belief a full, accurate and complete list of his creditors and of his indebtedness; and unless the purchaser shall at least five days before taking possession of such merchandise or paying therefor notify personally or by registered mail every creditor whose name and address is stated in said list, of the proposed sale and of the price, terms and conditions thereof. Sellers and purchasers under this act shall include corporations, associations, copartnerships and individuals, but nothing contained in this act shall apply to sales by executors, administrators, receivers, assignees under a voluntary assignment for the benefit of creditors, trustees in bankruptcy or by any public officers under judicial process''.

The necessity for legislation of this character seems to be vindicated fully by the persistent efforts of state legislatures to enact laws restricting sales of merchandise in bulk when not in the ordinary course of trade, except upon compliance with certain conditions prescribed by the various enactments. The earlier attempts to meet the real or preconceived urgency that impelled resort to relief against transactions of this character failed to secure judicial approval. Frequently they were condemned as enactments beyond constitutional authorization or limitation express or implied. The avoidances, however, were met finally and successfully by re-enactments deemed essential to avoid the judgment of organic condemnation pronounced and enforced by the courts, or by eliminating provisions previously held invalid. So that generally these statutes now are upheld as entirely free from constitutional interdiction, although the statutes of Ohio and some other states have not yet obtained the sanction of their appellate courts.

Unlike the act now considered, the acts of some of the states declare bulk sales of merchandise only presumptively fraudulent, as among others do the statutes of Idaho, Oklahoma and Oregon, while ours and others condemn such transactions as fraudulent and void as against the creditors of the seller except when the parties to the negotiations observe and conform to the publicity requirements, as do the statutes of Indiana, Maine, Montana, Texas, Michigan, Tennessee, Connecticut and other states. See collation of cases in *Boise Association of Credit Men* v. *Ellis*, 26 Idaho 438, 57 L. R. A. (N. S.) 917, note; *Johnson* v. *Beloosky*, 263 Ill. 363, 37 Ann. Cas. 414, note. But whether they declare fraudulent and void, or presumptively fraudulent, sales of merchandise in bulk not made in due course, unless such provisions are observed, the courts generally have recently held the acts not objectionable on constitutional grounds. Many statutes expressed virtually in the same language as ours, notably those of Tennessee, Michigan and Connecticut, have been upheld, as shown in the cases cited.

The principle underlying the later decisions is that a statute regulating sales of merchandise in bulk, and declaring them

actually or presumptively fraudulent as to creditors if not made as therein authorized, is not subject to the ban of legislative incompetency as an improper exercise of the police power inherent in all governments, and not class legislation. With these decisions we are in complete accord, because they are sustained by sound and logical reasoning and supported by the decided weight of authority. Our statute does not in anywise contravene any constitutional provision having operative force and effect in this state. It is not in conflict with any provision of the fourteenth amendment of the federal constitution, denying the right of the individual states to make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, or deprive any person of life, liberty or property without due process of law, or deny to any person within their jurisdiction the equal protection of the laws. In *Grocery Co.* v. *Kidd*, 151 Mich. 478, 217 U. S. 461, and *Lemiuex* v. *Young*, 79 Conn. 434, 211 U. S. 489, statutes upon the same subject and embodying the same language as ours were held valid by the appellate courts of those states, and the decisions affirmed by the supreme court of the United States.

Nor is the act amenable to the criticism that it is class legislation because its operation is limited to persons trading in merchandise only. If not objectionable on other grounds, a law is general, within the meaning of the constitutional requirement, when it applies alike and uniformly to all persons engaged in the same line of business. If it does so apply, it is public and general, not special or local, in character and effect; and of its necessity, propriety and policy the legislature only must judge. Cooley, Const. Lim. 554. As its application reaches and governs alike transactions in merchandise generally, it can not reasonably be said to be class legislation. If it is general and uniform in its operation and effect upon all persons engaged in the same business, and serves a wholesome and salutary public purpose, and does not impose unreasonable restrictions upon the rights of the owners of the property employed to contract with reference to it or upon their use and enjoyment of it, a statute can not be said to be repugnant to the constitution; and to us it seems ob-

vious our bulk sales statute does not offend against any of
these essentials of a valid law.  It is general and uniform in
its operation, in that it relates to the same character of bus-
iness transactions; it serves a salutary purpose, in that it is
intended to prevent or relieve from fraud; and it does not
impose undue restraint upon the freedom or liberty of con-
tract, or the use and enjoyment of property or property rights
by the owner.  *Carriage Co.* v. *Sweet,* 179 S. W. (Tex.) 257.
The object to be attained was to prevent bulk sales of mer-
chandise, because of the facility with which the disposal of
such stock may secretly be effected by an insolvent owner to
hinder, delay or defraud his creditors.  The generality of
the litigation contesting the validity of these acts demon-
strates their advisability and efficiency to serve their purpose.
They obviously are not in excess of legislative competency.

The next proposition urged by appellant is that, conceding
its validity, the act does not inveigh against the transaction
between him and Ringer.  This proposition leads to the in-
quiry whether payment in goods of the same quality and
character, equal in value to those in the store, constitutes a
sale in bulk of a part of a stock of merchandise within the
meaning of the statute.  Evidently, the transaction was not
entered into in the ordinary course of trade or in the regular
and usual prosecution of Ringer's business; and it is not dis-
puted that both parties wholly failed to comply with the con-
ditions imposed by the statute to exonerate the transaction
from its interdiction.  Had these requirements been complied
with, no charge of invalidity could successfully have been
sustained.  The purchase, if consummated without objection,
would perhaps have been legal even as against Ringer's cred-
itors, in the absence of liens of which the purchaser had ac-
tual or constructive notice.  But we disavow any intention to
adjudicate that question, as it does not now arise.  The ob-
vious effect of the transaction was to transfer to Marlow a
one half interest in the stock as it was at that time, and to
Ringer a like share of the goods purchased by Marlow.  This
realinement of interest, of course, did not work any impair-
ment or diminution in the value of the property that could
be subjected to the payment of Ringer's liabilities; indeed,

apart from the statute, it may be said the purchase improved the condition of the concern to liquidate the liabilities of the partners, whether joint or several, and certainly to liquidate the liabilities of Ringer. But, whatever may be the alteration in the status of the joint or individual liabilities of the partners, the statute expressly condemns as fraudulent and void as to creditors of the seller, except upon the conditions prescribed, the sale in bulk of any part of a stock of merchandise otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business. An interpretation in the effectuation of a release of the plaintiff from the embarrassment into which his ill advised zeal has led him, however honest he may have been, would do violence to the plain language of the statute.

That the plaintiff occupies the position of a mere trustee of the creditors of Ringer in respect to a moiety of the goods and fixtures in the store at the foundation of the copartnership, is another contention not in accord with the plain provisions of the statute. As the authorities cited say, and the act itself declares, the transaction was in its inception fraudulent and void. It is void *in toto*, not merely voidable. It is without legal effect as against Ringer's creditors. However unfortunate may be the consequences, the conclusion seems inevitable that to the extent the transaction prejudiced the rights of creditors it is a nullity, although valid as between the immediate parties. The merchandise, however acquired, in the store on the date of the attempted foreclosure and the actual levy of the execution was the property of Ringer in virtue of the statute, 'and the proceeds thereof were applicable to the extinguishment of the liens thereon, as adjudged by the decree. The partnership never became effective as to Wenmouth, and to it no title to the property passed and none could vest in it, but the title remained in Ringer as it had theretofore reposed in him. The cases cited in support of the contention of trusteeship show the fact therein to be that after the purchase and before the institution of any proceeding to declare the transaction fraudulent under the statute the vendee resold the merchandise, and as to the proceeds of the resale he became such trustee. But, conced-

ing that relation to have resulted, the property was held sub-
ject to sale to satisfy the liens created by the trust and levy.
For although an effort was made to distinguish between the
groceries in the store at the time of the original transaction,
and those subsequently purchased and placed therein by
Marlow, that attempt was adjudged abortive by the decree
of the circuit court, and not erroneously in view of the con-
flict of testimony as regards that inquiry.     Besides, there
was such commingling of the merchandise as to render the
whole of it chargeable with the liabilities preferred against
it.     *Mahoney* v. *Sams,* 159 S. W. (Tenn.) 1094; *Daly* v.
*Sumpter Drug Co.,* 127 Tenn. 412, 32 Ann. Cas. 1101, note;
*Mercantile Co.* v. *Moon,* 49 Mont. 307, 141 Pac. 665; 20 Cyc.
628.

The conclusion also follows that Marlow is not entitled to
be substituted to the rights of the Dana Company, whose bill
for goods purchased from them and placed in the store after
the formation of the partnership he paid out of his individual
funds during the pendency of this suit.     Neither that com-
pany nor the plaintiff acquired a lien on the property or any
part of it by the levy of an execution or other legal process.

Nor does the proof render clear the basis for the conten-
tion that by his silence Wenmouth acquiesced in Ringer's
denial, when asked by Marlow, that he was indebted for the
stock of goods then in the store, and, by failure to assert his
lien and indebtedness, is estopped to enforce them against the
joint assets of the concern.     Although Marlow does with as-
surance testify as to the verity of this conversation, he does
not sufficiently overcome the testimony to the contrary to per-
mit the application of the doctrine of estoppel, which the de-
cree virtually denied, conceding its legal adaption to the
facts if proved.     On the party relying upon an estoppel de-
volves the burden of proof, and to avail he must by clear, pre-
cise and unequivocal evidence establish the facts and circum-
stances upon which is based the principle he would apply.
*Hast* v. *Railroad Co.,* 52 W. Va. 396; *Water Co.* v. *Brown-
ing,* 53 W. Va. 436; see also *Daly* v. *Sumpter Drug Co.,
supra.*

The allowance to the attorney for the receiver, of which

complaint is made, and the disallowance to plaintiff's attorney of all but twenty-five dollars of the seventy-five dollars requested by him for his services, are not so inequitable as to warrant a reversal of the decree for these causes only, or for the costs awarded by it.

We therefore affirm the decree, and award the usual costs against the appellant.

*Affirmed.*