FISKE RUBBER CO. *v.* HAYES.

Opinion delivered December 3, 1917.

BULK SALES LAW—SALE OF PORTION OF STOCK.—In order to constitute a fraudulent sale under Act 88, Acts 1913, it must appear that a material portion of the seller's stock was sold in bulk out of the ordinary course of trade and contrary to the regular prosecution of the business of the seller.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Hinton, Rogers & Barber,* for appellant.

1. Defendants failed to comply with the Bulk Sales Act and the sale was void. 123 Ark. 285; 185 S. W. 263; 189 Mass. 598; 78 S. E. 51; 127 Ga. 303. A very material portion of the stock was sold.

*June P. Wooten,* for appellee.

A sale of $39.24 from a stock of $1,500 is not a violation of act. In both of the Arkansas cases cited, the *entire stock* was sold in bulk. Here the sale was of a small portion—an ordinary retail sale—and was not a violation of the act. Act 88, Acts 1913. No effort was made to defraud creditors and the sale was in the ordinary course of retail business—a very small proportion of the whole stock and in good faith.

HUMPHREYS, J. Appellant brought suit to the 1917 April term of the Pulaski County Chancery Court against Robert A. Thompson and Louis H. Dalhoff to recover $377.60 due it on open account by the firm of Thompson & Dalhoff; and against Orlando C. Hayes, J. N. Moxley and W. J. Cox, trading as Hayes Motor Car Company, to charge them as receivers of goods, wares and merchandise purchased by them from Thompson & Dalhoff. It was alleged in the complaint that the Hayes Motor Car Company, composed of Hayes, Moxley and Cox, purchased the stock of merchandise owned by Thompson & Dalhoff in Little Rock, in bulk, without complying with Act No. 88 of the session acts of 1913, commonly known as the Bulk Sales Law.

Neither Thompson nor Dalhoff made answer.

Orlando C. Hayes, J. N. Moxley and W. J. Cox, trading as Hayes Motor Car Company, filed a separate answer denying the material allegations of the complaint.

The cause was heard by the chancellor upon the pleadings and evidence, from which he found that the sale was not within the Bulk Sales Law. The bill, in so far as it sought to hold Hayes Motor Car Company, as receiver, for articles bought by Thompson & Dalhoff, was dismissed for the want of equity. An appeal has been lodged in this court for the purpose of testing the correctness of the chancellor's ruling in dismissing the bill.

The evidence in substance disclosed that Thompson & Dalhoff had been local agents in Little Rock for the sale of Allen and Jackson cars and had exhibition cars on hand when they surrendered the local agency to Hayes Motor Car Company. They were in business at 916 Main street. In fitting up the place of business, they had expended $35 for a partition, calcimining and show window; $10 for electric fixtures; $4 advanced charges on telephone; $8 for two pairs of rubber boots; $2.50 for washer, sprinkler and bucket; 80 cents for a mallet; 85 cents for a lock; 40 cents for a cuspidor; 35 cents for a waste basket; $2.60 for coal; $1 for floor sweep; $2.10 for hose with nozzle; 75 cents for a brass faucet; $25 partial payment on chairs and desk, the title of which remained in the vendor; $19 for Allen and Jackson stationery; $3 for gasoline in exhibition cars; $1 for lumber; $2.22 for cheese cloth; $2.45 for three Allen crank caps; $2.70 for three Allen cranks; 60 cents for an Allen hub cap; and $2.50 for express on advertising matter. Hayes Motor Car Company had been organized for the purpose of taking the local agency of the Allen and Jackson cars and did so on December 4, 1916. They desired the same location theretofore used by Thompson & Dalhoff on Main street, and, on December 7, agreed to remunerate Thompson & Dalhoff for all items above mentioned, and on the same day purchased the following additional

items out of the automobile stock owned by Thompson
& Dalhoff, towit: 24 talcum, 50 cents; 18 quarts of polish,
$10.80; tape, $5; cold patches, $2.30; blow-out patches,
$5.90; star wrenches, 34 cents, and 14 Hell-fi spark plugs,
$8.75. Thompson & Dalhoff were also conducting an
automobile accessory business at the same place and had
an accessory stock of about $1,500 including some old
machines they had gotten in exchange, exclusive of the
Allen and Jackson sample cars. A bill of sale setting
forth all the items above mentioned, of the total value
of $154.91, was delivered by Thompson & Dalhoff to the
Hayes Motor Car Company. It is not clear whether a
majority of the items included in the bill of sale consti-
tuted a part of the stock of the automobile accessory busi-
ness, or items incident to the conduct of the agency for
the Allen and Jackson cars. The character of most of
the items rather indicated that they were items connected
with and incident to the agency. It is certain that items
to the value of $35 or $40 were sold out of the automobile
accessory stock. The sale of items such as these in re-
spect to value and quantity was not out of the ordinary
in the conduct of the retail business in which they were
engaged. At the time of the exchange of the agency
and sale of the items aforesaid, the intention was for
Thompson & Dalhoff to secure another location and con-
tinue the automobile accessory business. No place was
secured and the business was discontinued. The parties
to the transaction never attempted to comply with the
requirements of the Bulk Sales Law.

It is insisted that the sale constituted a purchase or
assignment in bulk of the stock and fixtures of Thomp-
son & Dalhoff to the Hayes Motor Car Company with-
out complying with the Bulk Sales Law, and therefore
void.

The Bulk Sales Law was passed by the Legislature
to protect the rights of creditors from fraudulent sales
of property upon which credit had been extended. *Stuart
v. Elkhorn Bank & Trust Co.*, 123 Ark. 285.

In the instant case only a small portion of the stock was sold. The number of items and value thereof were inconsequential when compared with the amount and value of the entire stock. The number of articles sold and the value thereof were within an ordinary retail transaction. Thompson & Dalhoff were engaged in the retail business. It is manifest that the sale was not intended to impair a continuation of the Thompson & Dalhoff automobile accessory business at some other location in the city. It is well said by appellee that the Bulk Sales Law was never intended to prevent a merchant from moving his business to a new location and in so doing to dispose of odds and ends or remnants. The purpose of the act was to prevent fraudulent sales. In order to constitute a fraudulent sale under the act, it must appear that a material portion of the stock was sold in bulk out of the ordinary course of trade and contrary to the regular prosecution of the business of the seller. The chancellor found in the instant case that the sale was an ordinary retail transaction. We think the finding was supported by the weight of evidence. It certainly can not be said that the finding was contrary to a clear preponderance of the evidence.

The decree is affirmed.