[No. 17600.  Department One.  March 27, 1923.]

BLANCHARD COMPANY, *Respondent,* v. LEM WARD, *doing business as the Ward Music House, Defendant,* EUGENE LEMAY, *Appellant.*[1]

FRAUDULENT CONVEYANCES (14)—SALES IN BULK—WHAT CONSTITUTES. The sale of a portion of the stock of a general retail piano store and music house, consisting of only five to seven per cent of the value of the stock, is not within the bulk sales law, Rem. Comp. Stat., § 5835, requiring a sworn statement of all creditors upon sales of stocks in bulk, notwithstanding the sale comprised all his sheet music and included his sheet music business.

Appeal from a judgment of the superior court for Yakima county, Nichoson, J., entered June 27, 1922, upon findings in favor of the plaintiff, in garnishment proceedings. Reversed.

*Grady, Shumate & Velikanje,* for appellant.

*C. E. Udell,* for respondent.

HOLCOMB, J.—On and for some time prior to October 1, 1921, Ward was doing business in Yakima, conducting a general retail piano store and music house. During July, 1920, he purchased from the respondent goods, wares and merchandise on account, aggregating $203.81. On May 10, 1922, respondent obtained a judgment against Ward for the sum of $203.81, and $20.38 costs, and on the same day procured the issuance of a writ of garnishment against the appellant herein. Appellant answered, denying liability. Its answer was controverted by affidavit, and the case went to trial on these issues. The trial court, believing that the sale of personal property made to LeMay by Ward on April 1, 1921, constituted a sale in bulk, under the provisions of §§ 5832 to 5835, Rem. Comp.

[1]Reported in 213 Pac. 929.

Stat., entered judgment against the garnishee defendant for the amount of the judgment and costs, and from this judgment, the garnishee defendant appeals.

On or about April 1, 1921, appellant purchased from Ward 3,100 sheets of music, 100 books of music, some manuscript paper, a violin case, two ukelele cases, some note books, some instrument strings, violin strings, 32 harmonicas, 1 metronome, 1 banjo ukelele, 3 toys, and 3 ukeleles. A conditional bill of sale was entered into for the purchase of the personal property. The value of the personal property was placed by Ward at $350, and by appellant at $200. The remainder of the consideration, indicated by the conditional bill of sale as $500, was for the advantageous location appellant was getting. Prior to this transaction, appellant had been running a music store in a different locality in Yakima, and desired to get into the location occupied by Ward, and was willing to and did pay two or three hundred dollars for the location as a place of business. The stock of Ward at the time consisted of a large number of phonographs, pianos, phonograph records, typewriter, fixtures, music racks, cash register, show cases, light fixtures, sheet music, signs, a delivery truck, and miscellaneous merchandise and equipment. After the sale to appellant, Ward continued in business, running his business in the same storeroom entirely distinct from appellant's business, until he was closed out by sheriff's sale for nonpayment of taxes, about the first of October following. The value of the business owned by Ward on April 1, 1921, was placed by himself at between $5,000 and $6,000, and by appellant at from $5,000 to $7,000. At most the value of the personal property transferred to appellant on April 1, 1921, constituted from five to seven per cent of the value of the entire stock of goods,

wares, merchandise and equipment owned by Ward at the time.

Respondent relied upon the provision of § 5832, Rem. Comp. Stat., requiring a sworn statement containing the names and addresses of all creditors of the vendor to whom he might be indebted, together with the amount of the indebtedness due or owing, and the definition of a bulk sale contained in § 5835, Rem. Comp. Stat.

It is conceded that the sworn statement and list required by § 5832, *supra*, was not furnished by the vendor nor required by the appellant.

Section 5835, so far as material, is as follows:

"Any sale or transfer of a stock of goods, wares or merchandise, or all or substantially all, of the fixtures and equipment used in and about the business of the vendor, out of the usual or ordinary course of business or trade of the vendor, or whenever substantially the entire business or trade theretofore conducted by the vendor, shall be sold or conveyed or whenever an interest in or to the business or trade of the vendor is sold or conveyed, or attempted to be sold or conveyed, shall be deemed a sale and transfer in bulk in contemplation of this act."

Appellant contends that a sale of so small a portion of the stock of goods as from five to seven per cent of the entire value of the stock of the vendor is not a sale in bulk prohibited by the statutes.

Respondent contends that, since the sale was "out of the usual or ordinary course of business or trade of the vendor," and, also, that since it was a sale of the sheet music business and the trade connected therewith of the vendor, it was a sale of "an interest in or to the business or trade of the vendor," and in either event it was prohibited by the statutes.

Respondent also contends that our statute is more definite than the statutes on the same subject in most

of the states, and that our statutes will not bear the construction contended for by appellant. It is also contended that if a retailer may sell five per cent or ten per cent of his stock in a mass one day, a week later he may sell another five or ten per cent, and in a short time sell twenty-five per cent, and so on until the entire stock is disposed of, and thus circumvent the law.

" 'Bulk sales' is a generic term descriptive of a class of statutes designed to prevent the defrauding of creditors by the secret sale in bulk of substantially all of the merchant's stock of goods." 27 C. J. 873.·

"These statutes should be read as a whole for the purposes of construction. As they are of a penal character, and in derogation of the common law, and of the right to alienate property without restriction, they are to be strictly construed, and are not to be extended by construction to situations not clearly intended thereby." 27 C. J. 875.

We also find that the statutes of several of the states, where such laws have been passed upon by the courts of last resort, differ from ours. For instance, in the state of Tennessee, as set forth in *Daly v. Sumpter Drug Co.*, 127 Tenn. 412, 155 S. W. 167, Ann. Cas. 1914B 1101, cited by respondent, the statute provides, "that a sale of any portion of a stock of merchandise otherwise than in the ordinary course or trade in the regular and usual prosecution of the seller's business, or a sale of an entire stock of merchandise in bulk, shall be presumed to be fraudulent and void as against the creditors of the seller, unless" (followed by certain provisions therein as to formalities to be complied with by the vendor and vendee).

Our statute has no such provision as that above quoted prohibiting the sale of *any portion* of a stock of merchandise otherwise than in the ordinary course of trade, etc.

*Marlow v. Ringer,* 79 W. Va. 568, 91 S. E. 386, L. R. A. 1917D 619, where a transfer by a partner of his one-half interest in a grocery business was held void under the bulk sales law of West Virginia, cited by respondent, is not in point. Nor is the like case of *Virginia-Carolina Chemical Co. v. Bouchelle,* 12 Ga. App. 661, 78 S. E. 51, where it was held that a permit to transfer a half interest in the business to be transferred would violate the bulk sales law of that state.

Under our statute forbidding a sale of an interest in and to the business, we have also held that to sell an interest in the business in a stock of goods without requiring the formalities provided for by the bulk sales law is void. *Spokane Merchants' Association v. Koska,* 118 Wash. 445, 203 Pac. 969.

Our statute prohibits, without complying with the formalities provided therefor, the sale or transfer of a stock of goods, wares and merchandise, or substantially the entire business or trade theretofore conducted by the vendor, or an interest in or to the business or trade of the vendor. It does not prohibit the sale of a portion of the stock; nor can we extend it by construction to so intend. We held in *McAvoy v. Jennings,* 44 Wash. 79, 87 Pac. 53.

"The object of that law (the bulk sales act) was to prevent the vendor, generally a retail merchant, from escaping his responsibilities to his creditors by disposing of all his stock, pocketing the proceeds, and leaving his creditors without redress."

Similar decisions from other jurisdictions are: *Fiske Rubber Co. v. Hays Motor Car Co.,* 131 Ark. 248, 199 S. W. 96; *Armfield v. Saleeby,* 178 N. C. 298, 100 S. E. 611; *Carpenter v. Karnow,* 193 Fed. 762 (involving the Massachusetts bulk sales law).

We are forced to the conclusion, therefore, that the transaction involved herein was not one governed by

the bulk sales act, and that the judgment of the trial court must be reversed.

It is so ordered.

MACKINTOSH, MITCHELL, and BRIDGES, JJ., concur.