RAMEY-MILBURN COMPANY *v.* SEVICK.

Opinion delivered June 11, 1923.

1. FRAUDULENT CONVEYANCES—INADEQUACY OF PRICE.—Mere inadequacy of price is not of itself sufficient to establish fraud.

2. FRAUDULENT CONVEYANCES—BULK SALES LAW.—The purpose of the "bulk sales law" (Crawford & Moses' Digest, § 4870 *et seq.*), was to regulate bulk sales of merchandise as a part of the stock of a mercantile establishment, and it has no application to a manufacturing plant which sells its product merely as an incident to the business.

3. RECEIVERS—DISCRETION AS TO COSTS.—The question of imposing
the burden of the costs of a receivership being to some extent dis-
cretionary, an order imposing the costs of a receivership on the
plaintiffs will not be disturbed where the appointment turns out
to be unwarranted.

Appeal from White Chancery Court; *John E. Mar-*
*tineau,* Chancellor; affirmed.

*Avery M. Blount, J. A. Comer* and *Brundidge &*
*Neelly,* for appellant.

We recognize the right of an insolvent debtor to
make a *bona fide* sale of his property for the purpose of
paying his debts, but the value was so greatly in excess
of the purchase price as to manifest bad faith. 92 Ark.
248; 64 Ark. 187; 60 Ark. 433; 69 Ark. 544; 55 Ark. 582;
50 Ark. 320; 64 Ark. 380; 12 R. C. L. 533, 535, 581; 27
C. J. 510-535. The transaction was in contravention of
the bulk sales law. C. & M. Digest, 4870; 63 N. W. 1054;
99 N. E. 68. The court erred in taxing costs of receiver-
ship against appellants.

*Bogle & Sharp* and *Cockrill & Armistead,* for ap-
pellees.

The bulk sales law is to prevent fraudulent sales of
stocks of merchandise, and has no application to this
transaction of a sale of sawmills, lumber, logs, etc., a
manufacturing plant and products. 66 S. E. (Ga.) 257;
203 S. W. (Mo.) 507; 75 N. E. 404; 204 S. W. (Mo.) 730;
82 Pac. 905. Appellee Sevick was not insolvent at this
time of making conveyances, nor was the consideration
paid by Riner to him inadequate. 20 Cyc. 572, 583, 592;
60 Ark. 425; 61 Ark. 455. Mere inadequacy of price is
not sufficient to establish fraud. 118 Ark. 229; 99 Ark.
248; 64 Ark. 184; 20 Cyc. 442, and cases cited, 508, and
520. Appellee Riner was a *bona fide* purchaser, not
chargeable with any notice of insolvency or fraud, as
was also the Nebraska National Bank. The ground of
attack on the good faith of the sale is inadequacy of
consideration and insolvency of the seller, but our court
holds that the mere circumstance of being indebted is

no evidence of fraud. 9 Ark. 482; 17 Ark. 146; 8 Ark. 83; 23 Ark. 494; 26 Ark. 20. Even great inadequacy of price is only a badge of fraud and may be explained. 8 Ark. 510; 30 Ark. 117. The awarding of costs was in the discretion of the chancellor, and this discretion was properly exercised herein. 86 Ark. 608.

McCULLOCH, C. J. Charles H. Sevick, one of the appellees, was the owner of several small manufacturing plants in White County, one a veneer mill at Higginson, and four sawmill plants, one at Walker, one at Higginson, one at Crosby, and another at West Point. Sevick owned the real estate on which some of the plants were situated, and was also the owner of certain other real estate used in connection with the plants.

In January, 1922, Sevick executed two separate bills of sale conveying all of the property mentioned above to W. T. Riner, his co-appellee. The two bills of sale were executed contemporaneously, and were properly placed of record in White County. Each of the conveyances mentioned a consideration of the sum of one dollar "and other good and valuable considerations, the receipt of which is hereby acknowledged." On the date of these conveyances appellee Riner executed a mortgage to the Nebraska National Bank of Omaha to secure a debt of $24,500. Appellants were creditors of Sevick, and, soon after the filing of the bills of sale, they commenced this action in the chancery court of White County to cancel the conveyances to Riner as in fraud of the rights of Sevick's creditors. Sevick and Riner were both made defendants, and later the Nebraska National Bank filed an intervention asking that its mortgage executed by Riner be foreclosed, the interplea containing an allegation that no part of the debt had been paid.

The answer in the case contained appropriate denials of the allegations of fraud in the sale from Sevick to Riner, and also contained allegations that the real consideration for the purchase was the sum of $24,500 and the assumption by Riner of certain debts of Sevick

to third parties in the sum of approximately $4,000, mak-
ing a total consideration of about $28,000.

It appears from the allegations of the answer and
also from the proof adduced by the appellees that, prior
to the execution of these conveyances, Sevick was in-
debted to the Nebraska National Bank in the sum of
$24,500, which had been carried by the bank for some
time, and was past due. Sevick was anxious to dispose
of the property in order to raise funds to pay the debt
of the bank, was seeking a purchaser to raise funds for
that purpose, and was being assisted by the bank to find
a purchaser. Riner was employed by one of the officers
of the bank in service not connected with the bank, but
Riner's employers suggested to him the purchase of this
property and the operation of it. After thorough exam-
ination, Riner decided to purchase the property, and en-
tered into negotiations with Sevick, and the purchase
was consummated by the two conveyances mentioned
above. The payment of the purchase price was made,
according to the testimony, by the extinguishment of the
debt of Sevick to the bank and by the execution by Riner
of a note and mortgage to the bank for the amount of the
original indebtedness of Sevick.

There was a receiver appointed by the court, on the
application of appellants and over the protest and ob-
jection of appellee Riner.

On the final hearing of the cause upon oral and docu-
mentary evidence the court rndered a decree dismiss-
ing the complaint for want of equity, and adjudging the
costs, including the expenses of receivership, against
appellants, who have prosecuted an appeal to this court.

There was a conflict in the testimony. At least the
state of the testimony is such that different inferences
might have been drawn from it as to the good faith of
the transaction, but we have reached the conclusion that
the evidence is sufficient to support the finding of the
chancellor and to justify the decree which was rendered.
In the first place, it is not satisfactorily shown that Se-

vick was insolvent at the time of these conveyances. The finding of the chancellor on this issue is not against the preponderance of the evidence. Nor does the evidence preponderate to the effect that the transaction was not made in good faith, nor that the consideration was inadequate. There is a wide conflict in the testimony as to the value of the property at the time of the conveyance. The testimony adduced by appellants tends to show that the aggregate value of the property may have been as high as $37,000, whereas much testimony was introduced on this subject by appellees, and in that testimony the lowest value was fixed at about $22,000. There is abundant testimony which justifies a finding that the value of the property was not appreciably more than $28,000, the price paid by Riner to Sevick for it. Certainly the preponderance of the evidence does not justify the finding that the value was sufficiently in excess of the purchase price as to manifest bad faith. The principle is elemental that mere inadequacy of price is not of itself sufficient to establish fraud. While it cannot be said that the testimony in the case fixes a definite value beyond question, it is sufficient to show that the price was not grossly inadequate. We therefore agree with the chancellor in his finding that there was not sufficient testimony to establish fraud in the transaction.

It is also contended that the sale is void because it falls within our statute commonly known as the "bulk sales law" (Crawford & Moses' Digest, § 4870 et seq.). The statute in question is entitled, "An act to prevent the fraudulent sales of stocks of merchandise," and the first section provides that sales or transfers "in bulk of any part of or the whole of a stock of merchandise, or merchandise and the fixtures pertaining to the conduct of any such business, otherwise than in the ordinary course of trade and in the regular prosecution of the business of the seller," shall be void unless a notice to the creditors be given and the sale otherwise be made in accordance with the terms of the statute. It is clear, from the

language used, that the purpose was to regulate bulk sales of merchandise as a part of the stock of a mercantile establishment. It has no application to a manufacturing plant which sells its product merely as an incident to the business. That was evidently the thought in the minds of the court in the cases of *Fiske Rubber Co.* v. *Hays,* 131 Ark. 248, and *Robbins* v. *Fuller,* 148 Ark. 173, though the precise question now under consideration was not involved in that case. Other courts have so interpreted similar or identical statutes. *Balter* v. *Crum,* 199 Mo. App. 380, 203 S. W. 507; *Cooney, Eckstein & Co.* v. *Sweat,* 133 Ga. 511, 66 S. E. 257; *Wright* v. *Hart,* 182 N. Y. 330, 75 N. E. 404; *Everett Produce Co.* v. *Smith Bros.,* 40 Wash. 566, 82 Pac. 905.

In the present case the merchantable property consisted of logs and lumber of small value compared to the aggregate value of all of property conveyed, and it is quite clear, we think, that the bulk sales law has no application to it.

Finally, it is contended that the chancery court erred in decreeing the costs, including the expenses of the receivership, against appellants. The receiver was appointed over the protest of appellees, and the appointment turned out to be unwarranted, for the reason that the appellants failed to make out their case by sufficient testimony. It is not a case where the title to the property itself was in controversy and the appointment of the receiver was for the purpose of its preservation and protection against damage, but the receivership was to sequester the property so as to subject it to the payment of appellants' claims. We are already committed to the rule that the question of imposing the burden of the costs of a receivership is, to some extent, one of discretion of the courts, and that that discretion will not be disturbed unless there has been a clear abuse. *Myers* v. *Hines,* 122 Ark. 320. While there is some contrariety in the authorities on this subject, our decisions seem to be in

entire accord with the weight of authority. High on Receivers, § 809-A; 1 Clark on Receivers, § 850.

Finding no error in the ·decree, it is in all things affirmed.