ROOT REFINERIES v. GAY OIL COMPANY.

Opinion delivered May 17, 1926.

1. FRAUDULENT CONVEYANCES—CONSTRUCTION OF BULK SALES ACT.— Bulk Sales Act (Crawford & Moses' Dig., § 4870), providing that the sale in bulk of any part or the whole of a stock of merchandise and the fixtures pertaining to the conduct of any such business, otherwise than in the ordinary course of trade and the ordinary prosecution of the business of the seller, shall be void as against creditors of the seller, unless the terms of the act are complied with, held comprehensive enough to protect the creditors of wholesale as well as retail merchants.

2. FRAUDULENT CONVEYANCES—BULK SALES ACT—MERCHANDISE.— Merchandise, under the Bulk Sales Act, means something that is sold every day, and is constantly going out of the store and being replaced by other goods.

3. FRAUDULENT CONVEYANCES—BULK SALES ACT—MERCHANT.—A company engaged in refining crude oil into gasoline and other products and in selling such products from day to day in the same way that they are sold by merchants is a dealer in merchandise within the Bulk Sales Act.

Appeal from Pulaski Circuit Court; *Richard M. Mann*, Judge; affirmed.

STATEMENT OF FACTS.

This is an action instituted in the circuit court by the Root Refineries against the Gay Oil Company to recover the sum of $2,253.88, the invoice price of two cars of gasoline and one car of fuel oil.

The defendant filed an answer in which it denied that it purchased the goods sued for from the Root Refineries. It avers the facts to be that it purchased the gasoline and fuel oil in question from the Petroleum Products Company, and alleges that the company is indebted to it in the sum of $3,217.18, and pleads the same as a set-off. The defendant also alleges that the plaintiff is indebted to it in the sum of $61.66 for merchandise.

The record shows that on July 21, 1921, the Petroleum Products Company made a contract with the Rose City Cotton Oil Company of Little Rock to furnish it with fuel oil. The Petroleum Products Company made an agreement with the Gay Oil Company, whereby it was to carry out its contract with the Rose City Cotton Oil Company. By the terms of the contract the Petroleum Products Company was to furnish fuel oil to the Rose City Cotton Oil Company for a stipulated period of time, and the contract contained a provision by which the Petroleum Products Company guaranteed that the cost of the fuel oil furnished would not exceed the cost of coal. The Petroleum Products Company made an agreement with the Gay Oil Company by which the latter should furnish the fuel oil to the Rose City Cotton Oil Company for it under its contract. The fuel oil was furnished by the Petroleum Products Company to the Rose City Cotton Oil Company, and payments were made from time to time. During the months of October and November, 1921, the amount of fuel oil furnished invoiced $3,217.98. The fuel oil thus furnished exceeded the cost of coal, and for this reason the Rose City Cotton Oil Company declined to pay it. In the month of December, 1921, the Gay Oil Company, in the regular course of business, purchased from the Petroleum Products Company the gasoline and oil sued for in this case, amounting to

$2,253.84. Subsequently the Petroleum Products Company sold its physical properties, plant, refinery and real estate to the Root Refineries for a consideration of $130,000. It only retained its stock of oil on hand, which invoiced about $10,000.

According to the evidence for the plaintiff, it notified the Gay Oil Company of the purchase of the property of the Petroleum Products Company, and told the Gay Oil Company that it would fill its orders with the Petroleum Products Company for the two cars of gasoline and one car of fuel oil, provided the account was paid promptly, and that there would be no counterclaim on account of the alleged contract of guaranty between the Petroleum Products Company and the Rose City Cotton Oil Company, and the Gay Oil Company.

According to the evidence for the defendant, it thought that the Petroleum Products Company had shipped it the two cars of gasoline and one car of fuel oil, and did not know the Root Refineries in the transaction at all. In other words, the Gay Oil Company did not know that the Root Refineries had purchased the property of the Petroleum Products Company until after the two cars of gasoline and one car of fuel oil had been shipped to it under the order sent to the Petroleum Products Company.

The jury found against the plaintiff on its claim, and brought in a verdict in favor of the defendant for the amount by which its set-off against the Petroleum Products Company exceeded the claim of the Root Refineries.

From a judgment against it in favor of the Gay Oil Company for said amount the Root Refineries has duly prosecuted an appeal to this court.

*Rogers, Barber & Henry,* for appellant.

*Moore, Smith, Moore & Trieber* and *Geo. A. McConnell,* for appellee.

HART, J., (after stating the facts). It is conceded that the claim of the plaintiff was submitted to the jury upon proper instructions and that it is concluded by the verdict of the jury as to the account sued on by it.

It is claimed, however, that there is nothing in the record to show that the plaintiff assumed the debts and liabilities of the Petroleum Products Company, and that it is not liable to the defendant for any claim it might have against the Petroleum Products Company. This is true, but the liability attaches on other grounds.

The Petroleum Products Company sold and conveyed its business and all its property used in connection therewith to the Root Refineries for the sum of $130,000. It only reserved from the sale about $10,000 worth of oil, which it had in stock. It went out of business, and the Root Refineries succeeded to its business and operating plant. This summary sale of the business of the Petroleum Products Company to the Root Refineries was not in the ordinary course of business, and the transaction falls within the prohibition of our Bulk Sales Law. That statute provides that the sale in bulk of any part of, or the whole of, a stock of merchandise and the fixtures pertaining to the conduct of any such business, otherwise than in the ordinary course of trade and in the ordinary prosecution of the business of the seller, shall be void against the creditors of the seller unless the terms of the act are complied with. The language of the act is very broad and comprehensive, and by its terms protects all creditors of merchants alike.

The court has held that the language of the statute is sufficiently broad and comprehensive to protect the creditors of wholesale merchants as well as the creditors of retail merchants. *North American Provision Co.* v. *Fischer Lime & Cement Co.,* 168 Ark. 106.

No attempt was made to comply with the provisions of our Bulk Sales Law. The Petroleum Products Company sold practically all of its business, including its fixtures, to the Root Refineries for $130,000, which is a sum greatly in excess of the claim of the defendant. No other claim has been proved against the Petroleum Products Company. Therefore the assets received by the Root Refineries are far in excess of the claim of the Gay Oil Company.

In reaching this conclusion we are not unmindful that in *Robbins* v. *Fuller,* 148 Ark. 173, it was held that our Bulk Sales statute refers to the trade fixtures connected with the business, and not to the building in which the business is carried on.

The record shows that the Root Refineries bought the physical properties of the Petroleum Products Company for $130,000. This included the real estate, trade fixtures and all the remainder of its property except a stock of oil which invoiced about $10,000. The Petroleum Products Company was engaged in refining oil and selling gas, oil, fuel oil, gasoline and naphtha. While there was no separate valuation of the trade fixtures, in the very nature of things it is inferable that they were worth more than the amount of the claim of the Gay Oil Company, which is the only one proved in this case.

In this connection it may be stated that in *Ramey-Milburn Co.* v. *Sevick,* 159 Ark. 358, it was held that a person operating a veneer mill and sawmills, at which logs were manufactured into lumber and then sold, is not within the purview of our Bulk Sales statute, though he sells substantially all the lumber he has on hand at a particular time. The reason is that the sale of the lumber was only an incident to the operation of the manufacturing plant.

On the other hand, if the main business of Sevick had been to operate a lumber yard, the sale in bulk of his lumber and trade fixtures would have fallen under the ban of the statute, although he might have operated a sawmill and a veneer mill for the purpose of supplying, in whole or in part, stock for his lumber yard.

Merchandise means something that is sold every day, and is constantly going out of the store and being replaced by other goods. *Boise Association of Credit Men* v. *Ellis,* 26 Idaho 438, 144 Pac. 6 L. R. A. 1915E, 917. Such is the effect of our holding in *Fisk Rubber Co., Inc.,* v. *Hinson Auto Co.,* 168 Ark. 418, where it was held that an automobile repair shop did not fall within the prohibition of the statute, although there were occasional

sales of the various accessories which were kept for the purpose of repairing cars. The reason given was that the principal business of the company was repair work, and the supplies were carried for use in that business. The court said that the occasional sales of supplies constituted an inconsequential part of the principal business.

The Petroleum Products Company was refining crude oil, which it purchased, into the various products above enumerated and selling the same from day to day in precisely the same manner as other articles of commerce are bought and sold in trade by merchants. If was doing something more than selling its products as a necessary incident to refining oil. It was engaged in selling its various products in the same way that they are sold by merchants. The record shows that it was making contracts with various companies to supply them with such products as it sold. It made a contract with the Gay Oil Company to carry out some of its contracts which it had made with other companies. When the record is construed as a whole, it shows that the Petroleum Products Company was carrying on a business or trade in merchandise, and that it was not merely engaged in refining oil and selling the refined products as an incident to its main business. Hence the Petroleum Products Company fell within the ban of the statute when it sold its trade fixtures in connection with its other property.

The proof fully established the claim of the defendant against the Petroleum Products Company. Hence the court properly rendered judgment in favor of the defendant against the plaintiff for the amount its claim exceeded the claim of the plaintiff.

It follows that the judgment will be affirmed.