WELLSTON RADIO CORPORATION v. CULBERSON.

Opinion delivered December 19, 1927.

FRAUDULENT CONVEYANCES—BULK SALES LAW.—Where the owner of an electrical business, which did repair work, sold the business, and an action was brought charging that he had made a bulk sale in violation of the Bulk Sales Law (Crawford & Moses' Dig., §§ 4870-4872, as amended by Acts 1923, p. 340), evidence *held* to sustain a finding that the business was not a merchandise business, within the meaning of the Bulk Sales Law.

Appeal from Washington Chancery Court; *Lee Seamster*, Chancellor; affirmed.

*C. D. Atkinson, J. W. Grabiel, Combs & Johnson* and *J. S. Jameson,* for appellant.

*Walker & Walker,* for appellee.

McHANEY, J.   Appellant, a foreign corporation, brought this action in the Washington Chancery Court against H. I. Culberson and Claudine Benton, doing business as the Fayetteville Electric Company, and V. McDan-

iels, charging that Culberson & Benton were indebted to it in the sum of $102.42 for certain radio material and supplies, and that, while so indebted to it, they had made a sale in bulk of the business known as the Fayetteville Electric Company to McDaniels, not in the regular course of trade, and without conforming with §§ 4870, 4871 and 4872, C. & M. Digest, as amended by act 374 of the Acts of 1923, commonly known as the Bulk Sales Law. It thereafter filed an amendment to the complaint, making the McIlroy Banking Company a party defendant, and alleging that, prior to said sale by Culberson & Benton to McDaniels in bulk, said Fayetteville Electric Company had executed and delivered to said bank a chattel mort-gage on certain stock and fixtures belonging to the electric company, without complying with the Bulk Sales Law. The mortgage thus given covered a number of light fixtures, a showcase, a counter, a lamp case, tools, truck, wiring material, and radios. Thereafter the Fayetteville Lumber & Cement Company, Southwest Power Company, Empire Electric Company and American Electric Company intervened in said action and filed their separate complaints, each alleging that it had sold and delivered to the Fayetteville Electric Company, composed of Culberson & Benton, merchandise in the respective sums of $79.20, $360.73, $208.76, and $101.35, for which payment had not been made, and that the business of the Fayetteville Electric Company had been sold by Culberson & Benton to McDaniels without complying with the Bulk Sales Law, and in like manner raising the question of the validity of the chattel mortgage executed to the McIlroy Banking Company.

McDaniels answered, denying that he was indebted to any of the parties in any sum, and admitted that he had purchased the business of the Fayetteville Electric Company, but that, in doing so, the Bulk Sales Law of Arkansas was in no wise violated; that the business purchased by him was an electric repair shop, in which all kinds of electrical repairs were made, and in which various accessories were kept for the business of making repairs, and

that the Bulk Sales Law of Arkansas had no application to such a business. The banking company filed substantially the same kind of answer, and claimed that the Bulk Sales Law had no application to the business conducted by the Fayetteville Electric Company. Culberson & Benton did not answer, although service was had upon them upon the original complaint of appellant, Wellston Radio Corporation, but no service was had upon them by any of the interveners. Only two witnesses testified for appellant and interveners who pretended to know anything about the character of the business conducted by the Fayetteville Electric Company.

R. E. Estes testified that the business, at the time it was owned by Culberson, was retailing electric appliances and doing electric job work, the same as his company, the Southwest Power Company; that they kept lamps, lighting fixtures, washing machines, ice boxes, radios and other electrical accessories in stock.

Harry B. Curtis testified that, to the best of his knowledge, the Fayetteville Electric Company was engaged in the retail business, and also did job and repair work, but primarily a retail establishment, carrying such articles as heretofore enumerated by Estes, and including vacuum cleaners, electric wares, curling irons, waffle irons, heating pads, grills, bath heaters, and all small appliances. He was also a witness for the intervener, Southwest Power Company, which was a competitor of the Fayetteville Electric Company.

On the other hand, Mr. McDaniels testified that he bought the contracting, wiring and repair business that Culberson & Benton then had on hand for $4,250, in which he assumed payment of certain debts listed in the bill of sale in the sum of $1,439.51, and assumed the mortgage to the McIlroy Banking Company; that he had paid and was paying the accounts he assumed. He did not assume any of the accounts in question, nor agree to pay same. None of the material and supplies on which their accounts were based were in the stock at the time he bought, except one Westinghouse range, which was

still on hand, which had been purchased from the Southwest Power Company. This was the only item in the stock at the time he bought that belonged to either the appellant or any of the intervening appellants. He further testified that eighty per cent. of his business is for contract work and repairs, and that the stock kept on hand is for his own convenience in fulfilling contracts and in doing repair work. He stated that he would not estimate that over ten per cent. of his business was for sales of accessories and stock carried away by the customer at the time of the sale.

O. W. McDaniels, son of V. McDaniels, corroborated his father in every respect. He also testified that he worked for Mr. Culberson before his father purchased the business, and that Culberson carried on his business substantially as they did, but could not say what percentage of Culberson's business was for contract and repair work, and what percentage of counter sales in the store.

After hearing the testimony, the chancellor found "that the business of the Fayetteville Electric Company is not a merchandise business within the meaning of that term as used in the Bulk Sales Law, and therefore finds for the defendant, V. McDaniels. The court further finds that the mortgage held by the McIlroy Banking Company in no way conflicts with the rights of the plaintiff or intervener herein," and he thereupon entered a decree dismissing the complaint and interventions for want of equity, from which comes this appeal.

The only question involved in this controversy therefore is the applicability of the Bulk Sales Law to this particular business. In the recent case of *D. C. Goff Co.* v. *First State Bank of DeQueen, ante* p. 158, we said:

"It will be noticed from the language of the act that it pertains only to the business of merchandising—the business of a merchant or trader in merchandise—and the prohibition is leveled against the sale or mortgage in bulk of a 'part of or the whole of a stock of merchandise, or merchandise and fixtures' of a merchant.

Clearly, we think, a keeper of a restaurant, whose business it is to serve food and drink to the public, is not engaged in the mercantile or merchandising business, nor is he a merchant, within the meaning of the Bulk Sales Law. Even though he may keep some merchandise which is used or useful in his business, including cigars and cold drinks, still we are of the opinion that this does not change the character of the business, but is only incidental thereto.''

In the case of *Fisk Rubber Co., Inc.,* v. *Hinson Auto Co.,* 168 Ark. 418, 270 S. W. 605, this court said:

''Here there was a sale of the entire business, but the question is whether there was a stock of merchandise within the meaning of the statute. A stock of merchandise might, of course, consist solely or largely of automobile parts and accessories, but we have concluded that the finding of the court below that there was no sale of a stock of merchandise is not clearly against the preponderance of the evidence. The business sold was primarily and essentially a repair shop, including an agency for the sale of cars, but it is not contended that any automobiles were included in the sale. To carry on this business it was essential that various parts be kept in stock, but such parts were kept ordinarily for use in repairing cars, and the articles were usually adjusted to the cars of the purchaser.''

In the case of *Ramey-Milburn Co.* v. *Sevick,* 159 Ark. 358, 252 S. W. 20, this court held that the Bulk Sales Law ''has no application to a manufacturing plant which sells its products merely as an incident to the business''; and in *Fisk Rubber Co.* v. *Hayes,* 131 Ark. 248, 199 S. W. 96, an automobile agency and accessory business was held not to be within the Bulk Sales Law, for the reason that the part of the stock sold was inconsequential in comparison with the value of the entire stock.

We think this case is controlled by these cases, and that the decision of the chancery court is supported by the preponderance of the evidence; at least we cannot say that it is against the preponderance of the evidence.

Affirmed.