GRETZINGER v. WYNNE WHOLESALE GROCER COMPANY.

Opinion delivered February 23, 1931.

*Caraway, Baker & Gautney,* for appellant.

*Giles Dearing,* for appellee.

MEHAFFY, J. On October 25, 1929, the Wynne Wholesale Grocery Company, C. E. Martin and Morris Packing Company, commenced this action against S. C. Gretzinger, Robert Kirby and Dewey Sellers, alleging that Gretzinger and Kirby were owners and operators of a bakery at Wynne, consisting of an oven, mixer, engines, pans, cooking utensils, vessels and complete bakery outfit of the value of $3,500. Kirby had charge of and operated the bakery business and bought and sold all goods, wares, and merchandise and equipment used in the business.

S. C. Gretzinger and Robert Kirby were partners and they became indebted to the Wynne Wholesale Grocery Company and others. Prior to the time that Gretzinger and Kirby became partners, Gretzinger owned the property and Luther Beck managed it. They rented the building, both of them signing the rental contract. Whether Gretzinger and Beck were partners is immaterial.

While Beck was managing the business, it was operated as the "Wynne Bakery." After Kirby and Gretzinger formed a partnership it was operated as "Kirby's Hot Shop."

The stock of goods was bought by Kirby in the firm name, and it consisted of bakers' supplies, flour, sugar, yeast, fuel, etc. The firm had a truck which it used to distribute the products. The daily amount of stock on hand averaged around $200 or $250. The bakery purchased raw material and made bread, cakes, cookies, pastries, etc., and sold these products at wholesale and retail. The fixtures consisted of show cases, wrapping counter, cash register, desk, chair, bread mixer, molding machine, baking utensils, and equipment. Gretzinger and Kirby sold to Dewey Sellers the fixtures and all property and good will for $3,000, $1,000 cash, $1,000 due in six months, and $1,000 due in one year, evidenced by two promissory notes, bearing six per cent. interest per annum.

The chancellor found that Gretzinger and Kirby, while operating the business as partners, contracted the debts sued for, and gave judgment against Gretzinger and Kirby for the amount of the debts. He also found that the sale by Gretzinger and Kirby to Sellers was in violation of the Bulk Sales Act, and that the said purchaser, Dewey Sellers, was liable as receiver, for all the goods, wares, and merchandise, together with the fixtures and equipment purchased from Gretzinger and Kirby, and restrained Sellers from paying over to Kirby and Gretzinger any of the remaining $2,000 and impounded the notes in the First National Bank, and also held that the proceeds, when paid, be applied to the payment of debts proved against the Wynne Bakery and Kirby's Hot Shop.

The undisputed proof shows that Gretzinger and Kirby owed the debts, and the chancellor was therefore correct in rendering judgment against them.

The important question in the case, however, is whether the sale by Gretzinger and Kirby to Sellers was in violation of the Bulk Sales Act.

This sale was made on October 23, 1929. The Bulk Sales Act, the violation of which is alleged by the appellees is act 23 of the Acts of the General Assembly of 1929, approved February 19, 1929. Among other things this act provides: "The sale, transfer, mortgage or assignment in bulk of any part of or the whole of a stock of merchandise, or merchandise and fixtures pertaining to the conduct of any such business, otherwise than in the ordinary course of trade and in the regular prosecution of the business of the seller, transferrer, or assignor, shall be void against the creditors of the seller, transferrer, mortgagor or assignor, unless the seller, transferrer, mortgagor or assignor and the purchaser, transferrer and assignor shall, at least ten days before the sale or the giving of the said mortgage, make a full, detailed inventory and preserve the same, etc."

It is conceded that this act was not complied with. The contention of the appellant, however, is that a bakery is not included within the prohibition of the act; that the Bulk Sales Act does not apply to such a transaction.

Appellants call attention to and rely on *Ramey-Milburn Co.* v. *Sevick*, 159 Ark. 358, 252 S. W. 20. In that case the court said: "It is clear from the language used that the purpose was to regulate bulk sales of merchandise as a part of the stock of a mercantile establishment. It has no application to a manufacturing plant which sells its product merely as an incident to the business." The court further said: "Other courts have so interpreted similar or identical statutes." Citing numerous authorities.

In that case the merchantable property consisted of logs and lumber of small value compared to the aggregate value of all of the property conveyed. The property consisted of several small manufacturing plants in White County, one a veneer mill at Higginson, and four sawmill

plants, one at Walker, one at Higginson, one at Crosby, and another at West Point.

It appears from that case that there was no stock of merchandise sold except some logs and lumber which were of small value. Certainly the manufacturing plants and real estate that were sold could not be said to be a stock of merchandise.

Another case cited and relied on was the *Fisk Rubber Co.* v. *Hinson Auto Co.*, 168 Ark. 418, 270 S. W. 605. The court said in that case: "A stock of merchandise might, of course, consist solely or largely of automobile parts and accessories, but we have concluded that the finding of the court below that there was no sale of a stock of merchandise is not clearly against the preponderance of the evidence. The business sold was primarily and essentially a repair shop, including an agency for the sale of cars, but it is not contended that any automobiles were included in the sale. To carry on this business it was essential that various parts be kept in stock, but such parts were kept ordinarily for use in repairing cars, and the articles were usually adjusted to the cars of the purchaser."

The sale of the property above described was not within the Bulk Sales Act.

In the case of *Root Refineries* v. *Gay Oil Co.*, 171 Ark. 129, 284 S. W. 26, 46 A. L. R. 979, the cases relied on by appellant, *Ramey-Milburn Co.* v. *Sevick* and *Fisk Rubber Co.* v. *Hinson Auto Co.*, were considered and the court said: "In this connection it may be stated that in *Ramey-Milburn Co.* v. *Sevick*, 159 Ark. 358, 292 S. W. 20, it was held that a person operating a veneer mill and saw-mills, at which logs were manufactured into lumber and then sold, is not within the purview of our Bulk Sales statute, though he sells substantially all the lumber he has on hand at a particular time. The reason is that the sale of the lumber was only an incident to the operation of the manufacturing plant.

"On the other hand, if the main business of Sevick had been to operate a lumber yard, the sale in the bulk of his lumber and trade fixtures would have fallen under the ban of the statute, although he might have operated a sawmill and a veneer mill for the purpose of supplying, in whole or in part, stock for his lumber yard.

"Merchandise means something that is sold every day, and is constantly going out of the store and being replaced by other goods."

The court in the last case quoted from, cited *Boise Association of Credit Men* v. *Ellis*, 26 Idaho 438, 144 Pac. 6, 6 L. R. A. 1915E, 917, a decision of the Supreme Court of Idaho. The Idaho statute did not include the word "fixtures" and the Supreme Court of Idaho said that they could not read the word "fixtures" into the statute, and that merchandise, as used in this statute, must be construed to mean such things as are usually bought and sold by merchants. "Merchandise means something that is bought and sold every day, and is constantly going out of the store and being replaced by other goods; but the fixtures are not a part of the trade or business. They are not sold in the ordinary trade as goods."

It is also said in the Idaho case that the complaint did not charge that the goods, wares, or merchandise were sold to respondent Buhl, but it in effect claims that he should pay for them because he bought the fixtures, and this theory of the case would make the goods, wares and merchandise a part of the fixtures, instead of the fixtures being a part of the goods.

Our statute expressly includes fixtures and prohibits the sale in bulk of merchandise and fixtures in violation of its provisions. This court has held that a restaurant that had a soda fountain and sold cold drinks, cigars and confections, was not within the purview of the Bulk Sales Law, the court saying in speaking of the things sold: "This was however, incidental to its main business, that of serving foods to its customers." The court further said: "Clearly, we think, a keeper of a restaurant,

whose business it is to serve food and drink to the public, is not engaged in the mercantile or merchandising business, nor is he a merchant within the meaning of the Bulk Sales Law. Even though he may keep some merchandise which is used or useful in his business, including cigars and cold drinks, still we are of the opinion that this does not change the character of the business but is only incident thereto." *D. C. Goff Co.* v. *First State Bank of DeQueen,* 175 Ark. 158, 298 S. W. 884.

It was also held by this court that an electrical business which did repair work was not a merchandise business within the meaning of the Bulk Sales Law. The purchaser in that case "testified that he bought the contracting, wiring and repair business that Culberson and Benton then had on hand. * * * None of the material and supplies on which their accounts were based were in stock at the time he bought except one Westinghouse range, which was still on hand, which had been purchased from the Southwest Power Company. This was the only item in the stock at the time he bought that belonged to either the appellant or any of the intervening appellants. He further testified that 80 per cent. of the business is for contract work and repairs, and that the stock kept on hand is for his own convenience for fulfilling contracts and doing repair work. He stated that he would not estimate that over 10 per cent. of his business was for sales of accessories and stock carried away by the customer at the time of sale." *Wellston Radio Corp.* v. *Calhoun,* 175 Ark. 921, 300 S. W. 443.

In the instant case everything except the fixtures was not only for sale, but was sold every day and was constantly going out of the store or bakery and was being replaced by other goods. The principal business of the bakery was selling bread, cakes, cookies, pastries, etc. These were sold every day, and, while the stock kept on hand was not large, it was a stock constantly kept on hand, constantly being sold, and replaced by other goods. It is true that stock of merchandise was not large com-

pared with the value of the fixtures, but our statute includes fixtures as well as the stock of merchandise.

A sale or transfer of property in bulk is not within the condemnation of the statute unless the property falls within the statutory description at the time of the sale, but both the merchandise and fixtures are within our statute, and there is no property involved in this case except property within the statute, merchandise and fixtures.

It has been generally held that goods, wares and merchandise includes all classes of commodities kept for sale in the usual course of trade. 27 C. J. 880.

The stock of merchandise or goods, wares, and merchandise, do not include fixtures or other property not kept for sale, although used in connection with the business. Fixtures are not kept for sale, and if not included in the statute, would not be within the Bulk Sales Act. Our statute, however, includes fixtures.

It therefore appears that there was nothing sold to Sellers except the things included in the Bulk Sales Act.

There is some conflict in the decisions of the different courts in construing these statutes. The conflict in the decisions, however, is largely because of the differences in the statutes themselves. Some statutes mention stock of merchandise or goods, wares and merchandise and other goods, wares, merchandise and fixtures. Courts construing the statutes that did not name fixtures have held that fixtures were not included; that fixtures were not a part of the stock of merchandise. We do not deem it necessary to review the authorities because we think what is meant by the Bulk Sales Act in this State is settled by the decisions of this court, and, while statutes of this character are to be strictly construed, and not extended by construction, it is equally true that they should be construed and applied with a view to cure the evil at which they are aimed.

The following cases, most of them annotated, are cases construing statutes similar to the one herein in-

310

volved, *Boise Association of Credit Men* v. *Ellis,* 26 Idaho 438, 144 Pac. 6 L. R. A. 1915E, 617; *Everett Produce Co.* v. *Smith,* 40 Wash. 566, 82 Pac. 905, L. R. A. 2 (N. S.) 331; *Plass* v. *Morgan,* 56 Wash. 160, 78 Pac. 784; *Gallus* v. *Elmer,* 193 Mass. 106, 78 N. E. 772, 8 A. & E. Ann. Cas., 1067; *Hanson* v. *Vose,* 1441 Minn. 264, 175 N. W. 113, 7 A. L. R. 1573; *Blanchard Co.* v. *Ward,* 124 Wash. 204, 213 Pac. 929, 33 A. L. R. 59; *McPartin* v. *Clarkson,* 240 Mich. 390, 215 N. W. 338, 54 A. L. R. 1535.

The case of *Root Refineries* v. *Gay Oil Co., supra,* reviewed the cases decided by this court prior to that time and stated: "Merchandise means something that is sold every day and is constantly going out of the store and being replaced by other goods."

The distinction between this case and the cases where sales of restaurants were considered is that the bakery was selling merchandise every day. It was constantly going out of the store and being replaced by other goods, whereas the principal business of a restaurant is the serving of meals, not selling merchandise in the usual and ordinary way, and was therefore held to not be within the purview of the Bulk Sales Act.

The decree of the chancery court is affirmed.

KIRBY, J., dissents.