# CHARLESTON.

NEW RIVER GROCERY COMPANY *v.* ROBERT TRENT *et al.*

## (No. 5531)

Submitted February 23, 1926.   Decided March 2, 1926.

FRAUDULENT CONVEYANCES—PLEADING—*In Creditor's Suit to Set Aside Judgment in Which Fraud in Confessing Judgment Was Alleged, to Which No Answer Was Filed, it Was Not Necessary For Plaintiff to Prove Fraud; Failure of Buyer of Stock of Debtor to Comply With Bulk Sales Law Held to Make Sale Void As Against Creditors ( Code, C. 125, § 36, Chapter 74, §§ 2, 3a).*

Chapter 125, Section 36, Chapter 74, Section 2, and Chapter 74, Section 3a, Code, applied.

LIVELY, JUDGE, Absent.

(Fraudulent Conveyances, 27 C. J. §§ 365, 368, 446, 830, 885: Judgments, 34 C. J. §§ 386, 408.).

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Summers County.

Suit by the New River Grocery Company against Robert Trent and others, for the appointment of a receiver and for other relief.   From an adverse decree, overruling exceptions of the plaintiff to a commissioner's report, plaintiff appeals.

*Reversed and remanded.*

*James H. Miller* and *A. D. Daly,* for appellant.
*R. F. Dunlap,* for appellees.

HATCHER, JUDGE:

At a special term of the circuit court of Summers County, held on June 11, 1925, an agreed order was entered in this cause reciting that the cause, "having been regularly matured at rules", came on to be heard on plaintiff's bill, etc., and by agreement of all the parties thereto the cause was referred to a commissioner to state the usual account in a creditor's suit. It does not appear at what rules the cause was matured. The

bill was sworn to on June 1, 1925. The bill states that defendant Trent was a retail merchant in the City of Hinton; that he owed plaintiff $1,250.00; that according to information Trent was indebted to defendant Lewis, Hubbard and Company on May 23, 1925, in the sum of $878.98; that he owed numerous other creditors; that his stock of merchandise and his personal estate amounted to about $700.00 or $800.00; and that he was hopelessly insolvent.

The bill contains allegations as to the recovery of certain judgments against Trent before a local justice, which are not quite clear. But from copies of the judgments exhibited with the bill, we find that the judgments were entered as follows: On April 28, 1925, $300.00 in favor of Lewis, Hubbard and Company, $168.58 in favor of Lewis, Hubbard and Company, $110.40 in favor of E. E. Meador, and on May 23, 1925, $300.00 in favor of E. E. Meador. On each summons in the first three cases Trent signed the following: "I accept legal service on the within Summons in Summers County and confess judgment on same."

The bill further charges that E. E. Meador is a large stockholder in, and an official of Lewis, Hubbard and Co., that the entire amount of the above judgments was due and payable to Lewis, Hubbard and Co. at the time the judgments were taken, and that the debt was split up into sums under $300.00 in order to give the justice jurisdiction and with intent to defraud the other creditors of Trent; that Trent contracted a sale of his stock to defendant R. M. Deeds, who was a close kinsman of Meador; that no notice was given to the creditors of Trent as required by law; that the said sale and the said judgments were fraudulent and the result of a conspiracy between Lewis, Hubbard and Co., Meador and Trent; that Trent and Deeds refused to disclose the terms of the sale of Trent's merchandise, but that the plaintiff was informed that Lewis, Hubbard and Co. was to get the benefit of the sale; and that Lewis, Hubbard and Co., Meador and Deeds knew that Trent was insolvent at and before April 23, 1925.

The bill prays for the appointment of a receiver; that the said "judgment" and the said sale be set aside; and that the

proceeds thereof be applied to the payment of all the creditors without preference.

No demurrer, plea, or answer to the bill appears to have been filed.

A receiver seems to have been appointed, who took charge of Trent's merchandise, although the record does not disclose his initial appointment. The commissioner in chancery filed his report on July 21, 1925. The report named numerous other creditors, but omitted any reference to, or finding on the claim of the plaintiff; it gave preference to the judgments in favor of Lewis, Hubbard and Co. and Meador over all other creditors except the landlord of Trent and the City of Hinton (taxes), and reported at the bottom of the list a claim of $126.06 in favor of Deeds for merchandise placed in the Trent store by Deeds after his purchase.

The plaintiff excepted to the commissioner's report because it preferred the judgments of Lewis, Hubbard and Co. and Meador, because of the allowance of the claim of Deeds, and "for reasons to be assigned at bar."

The decree complained of here was entered on July 31, 1925. It overruled the exceptions of plaintiff to the commissioner's report, and stated that the report "is hereby ratified and confirmed in all respects." The decree further stated that it appeared from the report, evidence and proceedings that Trent had sold his merchandise to Deeds; that Deeds had taken possession thereof, had purchased additional goods and placed them in Trent's store, "but had not fully complied with the terms of the Bulk Sales Law when the order appointing George Hepburn as Special Receiver was entered." The decree confirms the judgments of Lewis, Hubbard and Co. and Meador and the preference given them by the commissioner, but advances the claim of Deeds over the judgments, to the third place in priority. It orders payment of the preferred creditors and then enumerates a list of unsecured creditors, which it purports to obtain from the commissioner's report, in which is included the claim of the plaintiff, but authorizes no recovery in their favor. From this decree the plaintiff is the sole appellant.

In support of the decree counsel contends that the fraud is not properly charged in the bill and that the plaintiff failed to prove its allegations. This argument overlooks the effect our statutory law gives the matters pleaded in the bill.

1.   When no answer is filed, "every material allegation of the bill—shall for the purpose of the suit, be taken as true, and no proof thereof shall be required." Code, Ch. 125, Sec. 36.

Consequently it was not necessary for the plaintiff to prove a single averment of the bill.

2.   Taking as true such allegations there is no alternative but to find that within two months prior to the bringing of this suit, Lewis, Hubbard and Co., Meador and Trent conspired to secure to Lewis, Hubbard and Co. a preference over the other creditors of Trent and that pursuant to such conspiracy the account of Lewis, Hubbard and Co. against Trent for $878.98 was divided into four claims and judgments thereon procured in the manner alleged in the bill. By virtue of Ch. 74, Sec. 2, Code, "every transfer or charge made by an insolvent debtor attempting to prefer any creditor of such insolvent debtor or to secure such a creditor—shall be void as to such preference." Such *charge* or *transfer* is not *ipso facto* void, but will be adjudged so if suit be brought by a creditor within the time fixed by the statute, as this suit was brought. Under the allegations of the bill, the judgments Trent permitted to be obtained against him, (three by confession and one by connivance and default) are by the statute declared "void as to such preference or security, but shall be taken to be for the benefit of all creditors of such debtor."

3.   The bill alleges that Deeds did not comply with the Bulk Sales Law. Counsel refer to the evidence of Trent before the commissioner, that Deeds *said he sent out notices* to the creditors of Trent. But this evidence is hearsay and would be entitled to no credence even if Deeds or Trent had answered the bill. Deeds also testified before the commissioner and made no claim that he had given the notice required by Ch. 74, Sec. 3-*a*, Code. The record discloses no avenue of escape for Deeds from the arraignment of the bill.

His failure to comply with the Bulk Sales Law rendered the sale "fraudulent and void as against the creditors of the seller." The criticism by counsel of the allegations of actual fraud need not be considered. Constructive fraud against the defendants is charged in the inexorable terms of the Statute. If the sale was void, then Deeds can stand in no higher relation towards Trent than any other unsecured creditor who let Trent have goods. Under our holding in *Marlow* v. *Ringer*, 79 W. Va. 568, the commingled assets found in Trent's store by the receiver are subject to the debts of creditors contracted prior to the attempted sale. "As respects creditors of the grantor, a fraudulent grantee stands in the grantor's place, and has no equities or rights superior to those possessed by the grantor against such creditors." 27 C. J. 665 (par. 446).

4. Ch. 74, Sec. 2, Code, also provides that the creditor instituting a suit to set aside and avoid such transfer or charge "together with all creditors of such insolvent debtor who shall come into the suit and unite with the plaintiff before final decree and agree to contribute to the costs and expenses of said suit, shall be entitled to have their claims first paid in full pro rata out of the property so transferred or charged, in preference to any creditor of such debtor who shall before final decree decline or fail to so unite and agree to contribute to the costs and expenses of said suit, but not in preference to such creditor as may attempt to sustain the preference given him by such transfer or charge." No other creditor of Trent united with plaintiff in the prosecution of this suit or agreed to contribute to the costs and expenses of the suit. The statute therefore decrees that the plaintiff shall have its claim "first paid in full—in preference to any creditor—but not in preference to such creditor as may attempt to sustain the preference given him by such transfer or charge."

The claims of plaintiff, and Lewis, Hubbard and Co. and Meador will therefore be paid *pro rata.*

For the foregoing reasons the decree complained of will be reversed and the cause remanded to the circuit court for

further proceedings to be had in accordance with the views herein expressed.

*Reversed and remanded.*